Martin BERGSTEIN and William B.
Weinberger, Plaintiffs,

v.

TEXAS INTERNATIONAL COMPANY,
et al., Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted: June 4, 1982.

Decided: Oct. 4, 1982.

As Amended: Oct. 12, 1982.

Joseph A. Rosenthal, Morris & Rosenthal, P.A., Wilmington, and Philip R. Brookmeyer, of Arthur N. Abbey, and Lester L. Levy, Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs.

William Prickett, and Michael Hanrahan, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, and Daniel S. Greenfeld, and Michael L. Hirschfeld, Seyfarth, Shaw, Fairweather & Geraldson, New York City, for defendants.

HARTNETT, Vice Chancellor.

Defendants moved to dismiss this stockholder's derivative suit because plaintiffs did not make a demand for corrective action on the Board of Directors of the corporation before instituting suit and arguably did not allege with sufficient particularity in the complaint the reasons for failing to make a demand. The motion is without merit and must be denied.

I

On July 7, 1981 plaintiff-Weinberger brought this stockholder's derivative action against the corporate defendant, Texas International Company, and the individual defendants, who are directors of Texas International, alleging, *inter alia,* that there had been a breach of fiduciary duty, a waste of corporate assets, self-dealing, fraudulent nondisclosure of material information in proxy statements, and a failure to exercise proper business judgment. All of the wrongdoings allegedly occurred in connection with certain stock appreciation rights which were granted to some, but not all, of the directors. A similar action was filed by Martin Bergstein on September 4, 1981. By stipulation and order of this Court the two actions were consolidated.

Defendants' motion to dismiss the complaint is based on the claim that plaintiffs' assertions in the complaint as to why no demand was made are not sufficient to excuse a demand before suit as required by Chancery Rule 23.1. The Weinberger complaint, paragraph 41, alleges:

"No demand upon the Board of Directors of the Company to bring this action has been made. Such demand would have been futile, and is not required, inasmuch as all of the present members of the Board are defendants in this action and each defendant has participated in, approved, authorized or acquiesced in various of the acts and transactions complained of herein. Thus, any demand on them to address the wrongs complained of would constitute a demand to bring an action against themselves; and would have been futile in that they could not have been expected to bring such action or to prosecute it with diligence."

Chancery Court Rule 23.1 provides in part:

" . . . The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort. . . ."

This same language appears in Rule 23.1 of the Federal Rules of Civil Procedure.

## II

■ In considering a motion to dismiss, only matters referred to in the pleadings can be considered. *Heit v. Baird,* 1st Cir., 567 F.2d 1157, 1159, n. 3 (1977); and the well-plead facts in the complaint must be assumed to be true. *Roland Intern. Corp. v. Najjar,* Del.Supr., 407 A.2d 1032 (1979); *Laventhal, Krekstein, Horwath & Horwath v. Tuckman,* Del.Supr., 372 A.2d 168 (1976). Conclusions of law or fact are, however, not assumed to be true or correct unless there exist allegations of specific facts which are sufficient to support the conclusions. *Weinberger v. UOP, Inc.,* Del.Ch., 409 A.2d 1262, 1264 (1979); *Cohen v. Mayor and Council of Wilmington,* Del.Ch., 99 A.2d 393 (1953).

## III

The Courts have enunciated many policy considerations which underlie the demand before suit requirements of Rule 23.1. These include the giving to corporate management an opportunity to correct any wrong or to seek an alternate course of action, thus avoiding expensive litigation; the early termination of meritless causes of action; and the prevention of strike suits. *Cramer v. Gen. Tel. & Elec. Corp.,* 3d Cir., 582 F.2d 259, 275 (1978). Some Courts have also held that a corporation's decision to enforce a right on its own behalf is a matter of business judgment, within the domain of the board of directors. *Lewis v. Curtis,* 3d Cir., 671 F.2d 779, 784 (1982). Thus, when considering a motion to dismiss where there has been no demand before suit was filed, a Court is confronted with the necessity of balancing the conflicting interests. "It thus appears desirable to us to find a balancing point where bona fide stockholder power to bring corporate causes of action cannot be unfairly trampled on by the board of directors, but the corporation can rid itself of detrimental litigation." *Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 779, 787 (1981).

■ Each case in which there has been no demand must, therefore, by its very nature, be carefully scrutinized and analyzed according to its own unique set of facts, taking into account the totality of the circumstances and the competing interests.

## IV

Courts disagree frequently as to what amount of personal involvement is required before a director comes under a disability which prevents his making an unbiased decision as to whether a claim made on behalf of the stockholders of the corporation has sufficient merit to be pursued, thereby excusing a demand before suit. It is therefore always necessary to consider what underlying circumstances determine which directors are sufficiently independent to be able to make an unprejudiced decision to

sue or not to sue. The Second U.S. Circuit Court of Appeals has expressed the opinion that a director who maintains a working relationship with other directors can never be truly independent. *Lasker v. Burks,* 2d Cir., 567 F.2d 1208, 1212 (1978). And this same Court has held that where all of the directors authorized or approved a challenged transaction, they could not be legally capable of deciding whether the claim had sufficient merit to be pursued by the corporation.

> "We are not aware of any case that has determined that directors against whom a claim has been asserted and who have determined that the claim against them should not be pursued, do not stand in *a dual relation which prevents the unprejudiced exercise of judgment.*" (emphasis added) (Citations omitted)

*Galef v. Alexander,* 2d Cir., 615 F.2d 51, 60 (1980).

On the other hand, the First U.S. Circuit Court of Appeals has vigorously enforced the demand requirement as "... a deliberate departure from the relaxed policy of 'notice' pleading promoted elsewhere in the Federal Rules." *Heit v. Baird,* supra at 1160.

The Third U.S. Circuit Court of Appeals agrees that the demand requirements of Rule 23.1 should be rigorously enforced, *Lewis v. Curtis,* supra at 784, *Cramer v. Gen. Tel. & Elec. Corp.,* supra, 582 F.2d at 275, but has expressed the view that the judgment of the directors should not always be immune from judicial scrutiny. "In order for the directors' judgment to merit judicial deference, that judgment must have been made in good faith and independently of any influence of those persons suspected of wrongdoing." Supra 582 F.2d 275.

### V

■ The standards for determination whether a demand upon the directors before suit is filed is required, or is not required because it would constitute an exercise in futility, is determined by the applicable state law. *Weiss v. Temporary Inv.*

*Fund, Inc.,* D.Del. 516 F.Supp. 665, 670, n. 13 (1981).

The Delaware Supreme Court, however, has not specifically set forth the criteria sufficient to excuse a demand on the board of directors prior to commencing suit. In *Zapata corp. v. Maldonado,* supra, the Delaware Supreme Court discussed the ability of a disinterested committee of directors to move for the termination of a stockholder's derivative action, but did not offer any guidelines which would apply to the present circumstances where no prior demand was made and no disinterested committee determined that the pending action was not in the best interests of the corporation.

In *Dann v. Chrysler Corp.,* Del. Ch., 174 A.2d 696 (1961), this Court considered the issue. That suit was a stockholder's derivative suit in which there were ninety-seven defendants, some of whom were or had been directors, officers, officials or employees of the corporation. The remaining defendants were suppliers of goods or services to Chrysler. Fraud and gross negligence were alleged in the complaint, and, as in the present case, no demand was made on the directors prior to suit being commenced. The defendants moved to dismiss that action, contending that the complaint did not allege with sufficient specificity the reasons for not making a demand. Chancellor Seitz, however, held that a demand was excused:

> "Plaintiffs allege as follows:
> '13. Demand by plaintiffs that the Board of Directors of Chrysler bring this action was futile because such directors have either approved or ratified the fraudulent schemes, acts and transactions herein complained of, or have participated in the fraudulent acts, or have acquiesced in the said acts, or have shared profits as a result of the said acts. For those reasons it would be useless to request defendants, or any of them, to bring this action for the relief herein sought.'
>
> Without prolonging the matter, I conclude that plaintiffs have at least alleged reasons for not making an effort to se-

cure or demand action from the board. Plaintiffs charge *all* the board with being *active or passive parties* to the various alleged fraudulent schemes, etc. *It is not normally to be expected that those charged with fraud or gross negligence would be amenable to a request that they take action against themselves.*

I conclude that the motion to dismiss on the basis of Rule 23(b) should be denied." (emphasis added)

*Dann v. Chrysler Corp.,* supra at 174 A.2d 700. The rule announced in that decision—not having been overturned—is still binding on this Court.

## VI

■ If the factual allegations of the complaint in the present case are construed in a light most favorable to plaintiffs—the non-moving parties—, as they must be, it is possible that some sort of abuse or breach of fiduciary duty in the authorization of the stock appreciation rights may have occurred. At the time the stock appreciation rights plan was approved by the directors, a majority of them (5 out of 9) were likely to financially benefit from the plan, thereby precluding the assertion that the plan was approved by a majority of disinterested directors. This fact alone is sufficient to excuse plaintiffs' failure to have made a demand for action on the Board of Directors before instituting this suit since plaintiffs were justified in assuming that a demand would have been futile.

## VII

The complaint also charged that the subsequent shareholder approval of the plan was obtained by means of false and misleading statements in the proxy materials which omitted material information, thereby rendering the shareholder approval unlawful and ineffective.

The Weinberger complaint states:

"28. . . . during the first quarter of 1981, the market price per share of the Company's Common Stock, after giving effect to the Company's two-for-one stock split effective January 28, 1981, increased from $19⅜ at the beginning of the quarter, to an all-time high of $46⅞, and closed at $39¼ on March 31, 1981. Due to these significant increases, the Company has announced in a newsletter to shareholders dated May 26, 1981, that the charge to operations in the first quarter of 1981 relating to Stock Appreciation Rights expense for the two grantee-defendants was an astronomical $6.5 million approximately and that by reason of the Stock Appreciation Rights the Company's pre-tax income from continuing operations of in excess of $9 million was reduced to slightly more than $2.5 million.

29. The Company has also announced in the forementioned newsletter that although its pre-tax income from continuing operations prior to the charge for stock appreciation rights increased by 359% in the first quarter of 1981, as a result of this charge to operations the Company's net income actually fell by 39%, from approximately $2.9 million in 1980 to approximately $1.7 million in 1981."

I have held that a majority of the directors were not truly disinterested and therefore a demand on the directors for action prior to filing of this suit was not necessary. It is therefore not necessary to consider whether the remaining directors were also disinterested but it should be noted that if the allegations of the complaint are true they would undoubtedly have been disqualified to pass on whether plaintiffs' claim had merit because it is alleged that they disseminated false and misleading proxy materials concerning the stock rights plan. See BLACK & PRUSSIN, "The Business Judgment Rule and Shareholder Derivative Actions, Viva Zapata", 37 *The Business Lawyer,* 57–58 (1981). The Delaware indemnification statute, 8 *Del.C.* § 145(b), does not necessarily preclude personal liability for these directors because this statute is not a grant of absolute immunity. E. FOLK, supra, at p. 100. Nor is it assured that this corporation will necessarily choose to indemnify the directors or will be able financially to do so.

## VIII

■ It thus appears that all of the eleven director-defendants in the present case are either charged with a breach of fiduciary duty, waste of corporate assets, self-dealing, nondisclosure of material information in proxy statements, or failure to exercise proper business judgment. All of the directors are named as defendants, and each director was serving in such capacity when: either (1) the stock appreciation rights plan was originally voted into existence, or (2) during the time when at least one of the allegedly misleading proxy statements recommending shareholder approval and ratification of the stock appreciation rights plan was mailed out.

Defendants' claim that the directors were named as defendants merely as a "bootstrap operation" is therefore not true. This is not a situation where there are directors who—not being connected with the disputed transactions—would, at the time of the suit, have been able to have dispassionately considered the demand—had one been made. *In re Kauffman Mutual Fund Actions,* 1st Cir., 479 F.2d 257, 264, *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973).

## IX

■ Defendants also claim that the mere approval by the directors of the disputed transaction was not a sufficient disability to excuse the necessity for demand because the nature of the alleged misconduct was related to a corporate purpose. Defendants assert, in effect, that even if the approval of the stock appreciation rights might be criticized, the rights were "of a character that could be thought to serve the interests of the company" and therefore be immune from judicial scrutiny. *In re Kauffman,* supra, 479 F.2d at 265.

Although stock appreciation rights have been recognized as being reasonably related to the legitimate business purpose of retaining qualified executive personnel, *Lieberman v. Becker,* Del.Supr., 155 A.2d 596, 601 (1959), such plans are not immune from patent abuse. "Thus, the aggregate compensation under the phantom stock scheme must be reasonable, and excessive amounts would comprise a waste of corporate assets." E. FOLK, *The Delaware General Corporation Law,* § 157, pp. 140–41, (1972) citing *Lieberman v. Becker,* supra.

In commenting on *Lieberman v. Becker,* Folk, at page 143, states:

"It was argued that the 'phantom stock' plan, unlike ordinary stock options, subjects the corporation to unlimited and incalculable liability, presumably because the stock's market price might skyrocket. There are two answers to this. First, a variety of conditions would prevent that from happening. Second, if matters actually 'got out of hand' and payments actually made became unreasonable and legally excessive, the courts could prevent waste of corporate assets.

Finally, 'phantom stock' plans, like stock options, *are legally impregnable if they are approved by disinterested directors or ratified by the stockholders.* In the *Lieberman* case, a committee of directors who were ineligible to participate in the plan awarded the units and, presumably, otherwise administered the plan. The plan had also been submitted to the stockholders for specific approval." (citations omitted) (emphasis added)

It is therefore clear that the mere fact that stock appreciation rights often have a legitimate business purpose is not sufficient to preclude their judicial scrutiny.

## X

The Third U.S. Circuit Court of Appeals in *Lewis v. Curtis,* supra, has captured the spirit and essence of the demand problem, and has succinctly couched it in a practical, common sense application of reality. That decision was written by Chief Judge Collins J. Seitz, who was formerly Chancellor of this Court, when he wrote *Dann v. Chrysler,* supra.

In *Lewis v. Curtis* the Court stated:

"We do not think that, to excuse demand, plaintiff must allege that the transaction could not under any circum-

stances ultimately be considered the product of business judgment. Rather the court, in determining whether demand is necessary, should consider whether a demand on the directors *would be likely to prod them to correct a wrong. With this as the focus, the interestedness of the directors in the transaction is more relevant to our inquiry than the character of the alleged wrong.*" (emphasis added) Supra, 671 F.2d 786.

The determining factor excusing a demand in *Lewis v. Curtis,* supra, was the same as had previously excused demand in *Dann v. Chrysler,* supra,—the fact that the directors who would have made a decision to sue or not to sue were all charged with having had knowledge of, and with having participated in and approved of, the wrongdoings referred to in the complaint.

"Thus, we do not think that we should apply different standards of 'interestedness' to cases in which plaintiff has made no demand and to those in which a demand has been made and rejected.

\*　　\*　　\*　　\*　　\*　　\*

Thus, to determine whether a decision not to sue the interested directors would be immunized from scrutiny, it is necessary to determine whether the directors who would make that decision were involved in the allegedly wrongful transaction.

Even if we were to concede that the case alleged here, 'a waste and spoilation of the assets,' is typically a difficult case to sustain, the mere desire to avoid a possibly futile, expensive proceeding should not lead courts to block its continuation through a demand-on-directors requirement. Taking plaintiff's allegations as true, the directors to be sued would control the response to any demand. In this situation, trial—or at least embarking on the road to trial—is required. To impose the bar of the demand requirement would largely be to create a pleading defense to a fact dispute.... Corporate directors should not, at the expense and inconvenience of an innocent corporation and its shareholders, be spared the trouble of responding to a complaint that states a cause of action, but may be deficient of proof."
*Lewis v. Curtis,* supra at 786–87.

Just as in *Lewis,* plaintiffs in the present case have a difficult task to ultimately succeed on the merits. But dismissal at this preliminary stage, before any discovery has been undertaken, would be an extraordinary remedy, not to be lightly considered. None of the named defendant-directors is truly disinterested because all either voted for a stock plan which benefitted them or allegedly made false or misleading statements in recommending that the shareholders ratify the plan. I therefore find that the plaintiffs have successfully alleged with sufficient particularity and specificity the futility of a demand.

### XI

■ I do, however, concur with defendants' claim that insofar as plaintiffs allege the domination and control of the directors by others, they have failed to do so with sufficient particularity. Such a charge, without some amount of factual foundation, is insufficient. "An allegation of domination and control, unsupported by underlying facts, does not satisfy the requirement of particularity." *In re Kauffman,* supra at 264.

■ Defendants also correctly object to plaintiffs' assertion that the directors who were not beneficiaries of the stock appreciation rights were desirous of perpetuating themselves in office, thus demonstrating their self-interest. This assertion by plaintiffs cannot be considered, however, because this allegation is not contained in the complaint. On a motion to dismiss, only the allegations in the complaint will be given consideration by the Court. *Lewis v. Curtis,* supra at 784.

■ In conclusion, although some of plaintiffs' claims are not supported by any factual allegations, plaintiffs have sufficiently alleged participation in or approval of the challenged transaction by all of the defendant-directors. And they have al-

leged participation by most of the directors in false or misleading proxy statements relating to the transaction. This activity, if true, coupled with the character of the challenged wrongdoing, demonstrates—for purposes of Rule 23.1—the futility of the plaintiffs having made a demand before suit. The futility must be gauged at the time suit is filed. *Stepak v. Dean,* Del. Ch., 434 A.2d 388, 390 (1981); *Cramer v. Gen. Tel. & Elec. Corp.,* 3d Cir., 582 F.2d 259, 276 (1978).

Defendants' motion to dismiss is therefore denied. IT IS SO ORDERED.