Majorie M. HABER and Shirley Cherin,
Trustees of a Trust for the benefit of
Ciezkowski, Plaintiffs,

v.

W.M. BELL, III, W.L. Ford, J.H. Glasser,
A.G. Hays, W.E. Humphrey, C.C. In-
gram, J.A. McNeese, F.B. Muhlfeld, Oral
Roberts, J.D. Scott, J.E. Tyree, G.R. Wil-
liams, M.D., S.L. Young and Oneok, Inc.,
Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted: Feb. 14, 1983.

Decided: June 13, 1983.

Joseph A. Rosenthal, Morris & Rosenthal, P.A., Wilmington, and Garwin, Bronzaft & Gerstein, New York City, for plaintiffs.

Andrew B. Kirkpatrick, Jr., and Donald F. Parsons, Morris, Nichols, Arsht & Tunnell, Wilmington, and John L. Arrington, Jr., and J. Clarke Kendall, II, Huffman, Arrington, Kihle, Gaberino & Dunn, Tulsa, Okl., for defendants, ONEOK, Inc., Bell, Ford, Glasser, Hays, Humphrey, Ingram, McNeese, Mulhfeld, Roberts, Williams, and Young.

Henry N. Herndon, Jr., and P. Clarkson Collins, Jr., Morris, James, Hitchens & Williams, Wilmington, for defendants, Scott and Tyree.

HARTNETT, Vice Chancellor.

Defendants have moved to dismiss this shareholder's derivative suit pursuant to Chancery Rule 12(b)(6) and Rule 23.1 because of plaintiffs' failure to make a presuit demand for redress on the directors of the corporation and the failure of the complaint to state with particularity the futility of making a demand. Defendants' motion to dismiss must be granted.

I

This shareholder's derivative action was brought by two stockholders of ONEOK, Inc., a Delaware corporation, challenging the action taken by the Board of ONEOK, Inc. in 1981 to amend a stock option plan which was originally approved by the shareholders in 1980 ("1980 Plan"). The defendants are ONEOK, Inc. and its 13 individual directors.

The complaint asserts two separate and distinct claims: first, that the Board's modification of the 1980 Stock Option Plan without shareholder approval is invalid because the modifications are contrary to, and not authorized under the terms of the 1980 Plan; and secondly, that the Board failed to provide for any consideration to be received by ONEOK, Inc. in exchange for the amendment of the outstanding options issued pursuant to the 1980 Plan, thereby constituting a gift of corporate assets to the optionees.

As part of the first claim, plaintiffs charge that the Board was without authority to amend a stock option plan which had previously received shareholder approval and which was not a 'qualified plan' under the United States Internal Revenue Code in 1980 when the Plan was created, and that in any event, the majority of the Board was personally interested in the 1981 amendments thereby precluding a valid amendment by the Executive Committee and Board of ONEOK, Inc.

In the complaint plaintiffs demand a nullification of any modifications to the 1980 Plan or of any of the options granted thereunder. Plaintiffs, therefore, argue that it would have been futile for them to have made a demand on the Board of Directors of ONEOK, Inc. before filing suit because all of the directors participated in, and approved of, the 1981 amendments and are personally liable for the wrongs alleged. Moreover, plaintiffs claim that any demand upon the directors to institute an action before filing suit would have been useless because the directors would be required to sue themselves.

II

In its original form, the 1980 Stock Option Plan was approved by ONEOK, Inc.'s stockholders at the December 9, 1980, annual meeting. In a proxy statement issued in connection with the 1980 annual meeting, the Board proposed approval of the Plan and explained the purpose of the Plan, as follows:

"The purpose of the Plan is to provide an additional incentive to key employees of the Company whose duties and responsibilities are particularly vital to the Company's continued success. This is accomplished by granting stock options to such employees, which options require that the employee agrees to remain in the Company's employ for at least two years after receipt of the option or until retirement, if earlier. The Board of Directors and management of the Company believe that ownership in the Company by such employees resulting from the Plan will give added incentive for their efforts on the Company's behalf. This will, in turn, enhance the Company's ability to serve its customers while securing for its stockholders a fair return on their investment."

The proxy statement further sets forth that the 1980 Plan provided for the issuance of "nonqualified stock options" which offered special tax treatment under the provisions of the United States Internal Revenue Code. Under the then existing Internal Revenue Code the holder of a nonqualified stock option, upon exercise of it, would realize ordinary income to the extent of the difference between the option price and the fair market value of the stock when exercised, and consequently the company could deduct the same amount, as an expense, for federal income tax purposes.

The 1980 Plan, however, embodied provisions for the amendment or termination of the Plan as follows:

"The Board of Directors of the Company may at any time terminate the Plan, or make such modifications of the Plan as it shall deem advisable; provided, however, that the Board of Directors may not, without further approval by the stockholders of the Company, (1) except as provided in paragraph 12 hereof increase the maximum number of shares for which options may be granted under this Plan, either in the aggregate or to any individual employee, or change the minimum option price; (2) extend the period during which options may be granted or exercised; (3) withdraw the authority to administer the Plan from a committee consisting of directors of the Company not eligible to receive options granted under the Plan; or (4) change the classification of Employees eligible to receive options hereunder."

After shareholder approval was obtained, options were granted under the 1980 Plan on January 15, 1981, and on July 16, 1981. The complaint alleges that Messrs. Scott and Tyree, both directors of ONEOK, Inc., were beneficiaries under this Plan. There is no allegation that any of the remaining 11 directors of ONEOK, Inc. had any personal financial interest in the Stock Option Plan. Furthermore, the complaint does not challenge the circumstances surrounding the adoption and approval of the 1980 Plan.

Following the enactment of the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 95 Stat. 256 (1981), ("ERTA"), the ONEOK, Inc. Board voted on September 17, 1981, to amend the 1980 Plan so as to provide that options previously granted ("nonqualified") on July 16, 1981, and outstanding options granted thereafter, would be "qualified" as incentive stock options. ERTA was enacted on August 13, 1981, with the incentive stock option provisions having an effective date of January 1, 1981, and having retroactive application to outstanding options granted on or after January 1, 1976, subject to certain conditions.

The modifications made in response to the change in the tax law were proposed by the Executive Committee which consisted of 3 members who were not beneficiaries under the 1980 Plan, and approved by the Board which consisted of 13 members—two of whom were beneficiaries under the 1980 Plan.

A proxy statement dated November 6, 1981, issued in connection with the 1981 annual meeting of ONEOK, Inc. set forth the adopted amendments and the restrictions thereon. The proxy statement also informed the shareholders that:

"The corporate tax deduction previously allowed (to the corporation) upon the exercise of a nonqualified stock option will not be allowed in the case of the exercise of Incentive Stock Options."

In essence, this loss of a potential tax deduction to ONEOK, Inc. of an unknown amount, which would result from the converting of the nonqualified option into a qualified option, is the harm for which plaintiffs seek relief in this suit.

## III

 In considering a motion to dismiss, only those matters referred to in the pleadings are to be considered by the Court. All well plead facts will be assumed to be true and all inferences will be viewed in a light most favorable to the plaintiff. *Del. State Troopers Lodge, Etc. v. O'Rourke,* Del. Ch., 403 A.2d 1109 (1979). Conclusions of law or fact, however, will not be assumed to be true without specific allegations of fact which support the conclusion. *Bergstein v. Texas Intern. Co.,* Del. Ch., 453 A.2d 467 (1982), and cases cited therein.

Chancery Court Rule 23.1, which is virtually identical to Fed.R.Civ.P. 23.1, provides in relevant part:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ... [t]he complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort."

 This rule is one of substantive right—not simply a technical rule of pleading. It is designed to give a corporation, on whose behalf a derivative suit is brought, the opportunity to rectify the alleged wrong without suit or to control any litigation brought for its benefit. A plaintiff, therefore, who chooses not to make a demand prior to suit is faced with the responsibility of demonstrating with particularity why his demand on the Board of Directors would have been futile. If the plaintiff fails in meeting this burden he will find that his suit will be dismissed, in response to a motion to dismiss, even if he has an otherwise meritorious claim. *Mayer v. Adams,* Del.Supr., 174 A.2d 313 (1961). Also see *Bergstein v. Texas Intern. Co.,* supra. The test for determining whether a demand for redress before suit would have been futile is whether the Board, at the time of the filing of the suit, could have impartially considered and acted upon the demand. An interested Board cannot be impartial. *Bergstein v. Texas Intern. Co.,* supra.

 The business judgment rule, which is a presumption that a rational business decision of an officer or director is proper unless facts exist which remove the decision from the protection of the rule, is a potential defense to allegations of Board interestedness and demand futility. *Lewis v. Curtis,* 3d Cir., 671 F.2d 779 (1982). Thus where a majority of the directors have no personal interest in the disputed transaction, and the transaction is protected from judicial scrutiny by the presumption of the business judgment rule, the directors do not face any personal liability for their approval of the transactions and could, without bias, consider a pre-suit demand for redress. A plaintiff, however, is not required to allege, in order to excuse a demand before suit, that a challenged transaction could not, under any circumstances, be considered the product of business judgment. He must only allege facts which, if true, show that a reasonable inference may be drawn that the business judgment rule does not apply. *Lewis v. Curtis,* supra. In certain circumstances, the challenged transaction, itself, may permit such an inference. However, in order for a plaintiff to avoid the presumption of the business judgment rule, and permit a Court to, at least, draw a reasonable inference that the rule is not applicable, there must be allegations of particular facts—and not conclusions—from which such an inference can be drawn. See *Cohen v. Mayor and Council of Wilmington,* Del. Ch., 99 A.2d 393 (1953); *Penn Mart Realty*

*Co. v. Becker,* Del. Ch., 298 A.2d 349 (1972). See also *Lewis v. Aronson,* Del. Ch., 466 A.2d 375 (1983), and *Kaufman v. Beal,* Del. Ch., C.A. Nos. 6485–N.C. and 6526–N.C., Hartnett, V.C. (Feb. 25, 1983) which also discussed this issue.

## IV

Plaintiffs first attempt to excuse their failure to make a demand before suit by alleging that the director-defendants have participated in, approved of, and are liable for the injurious transactions, and therefore claim that the business judgment rule does not afford protection in this matter. They allege that at the inception of this suit, the Board consisted of 13 members who were present at all relevant times, two of whom are alleged to be beneficiaries under the 1980 Plan. Coupled with this allegation are the further allegations demonstrating business ties between ONEOK, Inc. and 2 other defendants—directors Messrs. Muhlfeld and Glasser. Specifically, plaintiffs assert that defendant Muhlfeld is also a director and employee of Stone & Webster, Inc. which has received fees from ONEOK, Inc. for consulting services. Plaintiffs also allege that defendant Glasser is an attorney associated with a law firm which ONEOK, Inc. is considering retaining. By such allegations, plaintiffs insist that financial interestedness by Messrs. Muhlfeld and Glasser has been demonstrated.

■ As previously noted, mere conclusory allegations of financial interest will not suffice to show interestedness. A review of the record shows that the plaintiffs have not alleged facts, which, if true, show that a majority of the Board had any personal interest in the alleged injurious transactions. In fact, at best plaintiffs have only demonstrated that two of the 13 directors had any personal financial interest in the 1980 Plan. The allegations with respect to the other two defendants—directors Muhlfeld and Glasser—do not illustrate that either of these two directors stood on both sides of the challenged transaction. Those allegations merely indicate the possibility of a conflict of interest of some unknown transaction at some unknown time. Even if those two had a personal interest, however, a clear majority of the Board would still have been disinterested. For these reasons, that portion of plaintiffs' claim based on allegations of personal financial interest on the part of a majority of the Board or the Executive Committee must be dismissed because of the failure of the plaintiffs to make a demand for redress on the Board of ONEOK, Inc. before filing suit.

## V

Plaintiffs also argue that the directors of ONEOK, Inc., in effect, failed to properly fulfill their fiduciary duties in approving the 1981 amendments to the 1980 Plan and therefore are not protected by the presumption of propriety afforded by the business judgment rule. Particularly, plaintiffs say that the 1981 amendments are contrary to and not authorized by the 1980 Plan.

■ The terms of the 1980 Plan, however, specifically provided for the termination and modification of the Plan. The Board was authorized under that Plan to make such modifications as it should deem advisable with four exceptions: (1) an increase in number of shares or price of shares; (2) an extension of the exercise period; (3) the withdrawal of authority from the Executive Committee; or (4) a change in classification of eligible employees. The 1981 amendments which were a change in tax treatment do not come within any of these four prohibitions and a complete reading of the terms of the Plan shows that the modification challenged by the plaintiffs was a modification which did not require additional shareholder approval. The Board of ONEOK, Inc., therefore, could not have been guilty of a breach of fiduciary duty in failing to submit the amendments for shareholder approval and could have impartially considered a pre-suit demand.

## VI

■ Plaintiffs also have failed to show that their failure to make a demand before suit should be excused as to their claim of waste of corporate assets. This claim is based on the corporation's potential loss of a tax deduction in an undetermined amount. There has been no factual allegation that a majority of the Board was to receive any of this largess or that the 1981 amendments were in violation of the 1980 Plan.

■ Notwithstanding the omission of these factual allegations, plaintiffs, in effect, urge that the directors' actions were not protected by the business judgment rule because they claim that the very nature of the transaction precludes the application of that rule. In order, however, to show that the business judgment rule does not bar judicial scrutiny, plaintiffs must have alleged facts which, if true, showed that the underlying transaction was totally undirected to a valid corporate purpose and the approval thereof called the business judgment of the Board into question. *Saxe v. Brady,* Del. Ch., 184 A.2d 602 (1962).

■ A corporation, however, may utilize stock options, purchases, and other means, both present and deferred, to pay compensation to its employees. 8 *Del. C.* § 122(15). And generally directors have the sole authority to determine compensation levels and this determination is protected by the presumption of the business judgment rule in the absence of a showing that the business judgment rule does not apply because of a disabling factor. *Beard v. Elster,* Del.Supr., 160 A.2d 731 (1960); *Schreiber v. Pennzoil Co.,* Del. Ch., 419 A.2d 952 (1980); *Prince v. Bensinger,* Del. Ch., 244 A.2d 89 (1968).

■ The approval of the 1980 Stock Option Plan and the 1981 amendments were clearly within the discretion of the Board of Directors because the tax benefit to the optionees is obviously a form of compensation and compensation levels come within the discretion of the Board. Such decisions are presumed to have been made in good faith. *Beard v. Elster,* supra. Moreover, there are no allegations of facts which show that the options are of such gross disparity of consideration as to make Board approval appear to be of the type no reasonable businessman could approve. *Saxe v. Brady,* Del. Ch., 184 A.2d 602 (1962). The plaintiffs merely asserted in the complaint that the added tax benefit to the holders is a waste of assets. Plaintiffs, therefore, have failed to show how the underlying transaction could be defective and not protected by the presumption of propriety afforded by the business judgment rule.

## VII

■ Plaintiffs' other allegations that a demand before suit would have been futile because all the directors of ONEOK, Inc. "approved or acquiesced in" the complained wrongs also is without merit. Their reliance on *Dann v. Chrysler,* Del. Ch., 174 A.2d 696 (1961), is misplaced. A close reading of that decision shows that the Court's ruling was predicated on its finding that the complaint contained the "requisite particulars" to permit an inference that Board approval was more than mere acquiescence or passive approval. The Board's approval in that case was possibly fraudulent or grossly negligent. This is quite different than a mere allegation that a Board acquiesced or approved a transaction. Allegations that the members of a Board of Directors "approved or acquiesced in" the action which plaintiffs attack are, therefore, not sufficient to excuse a demand for redress before suit.

## VIII

■ Plaintiffs finally contend that, in any event, shareholder approval of option plans is required. Plaintiffs do not cite any Delaware authority for this proposition but rely on a general policy statement of the New York Stock Exchange. The Rules of the New York Stock Exchange are not binding on this Court, however, and do not necessarily support a claim brought under

Delaware law. In any event, a September 1981 New York Stock Exchange memorandum, in addressing incentive stock option amendments to existing stock plans made pursuant to ËRTA, reveals that its policy is that "shareholder approval is not required for amendment to existing plans adopted to comply with the new incentive stock options rules." Nor do plaintiffs challenge the fact that neither ERTA nor any regulation promulgated thereunder requires shareholder approval.

■ Plaintiffs' contentions might have merit if there were factual allegations showing financial interestedness or other bias on the part of a majority of the Board, 8 *Del. C.* § 144; *Kerbs v. California Eastern Airways, Inc.,* Del.Supr., 90 A.2d 652 (1952), or allegations of issuance of unauthorized shares. See 8 *Del. C.* § 157. In the case of a disinterested Board, however, Delaware law does not require shareholder approval of a stock option plan. There are, therefore, no facts alleged which indicate that the directors' acts in modifying the 1980 Plan without shareholder approval was in breach of any fiduciary duty.

### IX

■ Plaintiffs' second excuse for not making a pre-suit demand is that the members of the Board would have been placed in the position of suing themselves. This is not a sufficient excuse for failure to make a demand. To require a pre-suit demand where there has been no showing of interestedness would permit the circumvention of the purpose of Rule 23.1. *Heit v. Baird,* 1st Cir., 567 F.2d 1157 (1977); *In re Kauffman Mutual Fund,* 1st Cir., 479 F.2d 257, *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973).

### X

In conclusion, the 1981 modifications of the 1980 Stock Option Plan after the 1981 ERTA amendments to the Internal Revenue Code were suggested by an independent committee and approved by a disinterested Board. The plaintiffs have not alleged facts which would permit the Court to draw a reasonable inference that the modifications were of a type not protected by the business judgment rule or that any personal gain inured to a majority of the Board. The directors, therefore, could have—without bias—considered a demand before suit for redress and such a demand would not have been futile. The complaint must be dismissed because plaintiffs have not borne their burden of showing that their failure to make a demand on the Board of ONEOK, Inc. before suit was filed can be excused.

IT IS SO ORDERED.