Harry LEWIS, Plaintiff,

v.

Senior ARONSON, I.W. Burnham, II, Richard E. Deems, Leo R. Fink, Roger A. Gerber, Theodore P. Glueck, IB. J. Goldschmidt, Saul Duff Kronovet, Robert Schlageter, Poul Andreassen and Meyers Parking System, Inc., Defendants.

Court of Chancery of Delaware, New Castle County.

Motion to Dismiss Submitted: Jan. 14, 1983.

Decided: March 31, 1983.

Revised: May 26 and July 15, 1983.

Motion for Reargument Submitted: April 14, 1983.

Decided: May 25, 1983.

Revised: July 15, 1983.

Joseph A. Rosenthal, Morris & Rosenthal, P.A., Wilmington, and Irving Bizar, Pincus, Ohrenstein, Bizar, D'Allesandro & Solomon, New York City, for plaintiff.

Peter M. Sieglaff, Potter, Anderson & Corroon, Wilmington, and Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

HARTNETT, Vice Chancellor.

Defendants moved to dismiss this stockholder's derivative suit because of the failure of the plaintiff to make a demand on the Board of Directors of the corporate defendant prior to the filing of suit and because of the failure of the plaintiff to adequately demonstrate the futility of making the demand. The motion must be denied.

I

The plaintiff, Harry Lewis, filed this stockholder's derivative suit on behalf of the stockholders of Meyers Parking System, Inc. ("Meyers Parking"), a Delaware corporation, naming as defendants Meyers Parking and ten individuals who were directors of Meyers Parking. At this stage of the proceedings the facts as alleged in the complaint must be accepted as being true. The complaint focuses on certain transactions which Meyers Parking entered into with Leo Fink, the Chairman of the Board of Directors of the corporation. Meyers Parking was originally a wholly-owned subsidiary of Prudential Building Maintenance Corp. ("Prudential Building"). In 1978 Prudential Building distributed its Meyers Parking shares to Prudential Building's stockholders, and after this distribution, Mr. Fink, who had been the chief executive officer of Prudential Building, became Chairman of the Board of Meyers Parking. Meyers Parking and Prudential Building had a sharing agreement under which Meyers Parking reimbursed Prudential Building for Mr. Fink's services while Mr. Fink remained the chief executive officer of Prudential Building. In April of 1980, Mr. Fink changed his status with Prudential Building from employee to consultant. At this time, pursuant to its sharing agreement, Meyers Parking reimbursed Prudential Building for 25% of the consulting fees which Prudential Building paid to Mr. Fink.

In January of 1981, Meyers Parking and Mr. Fink entered into a five-year employment contract—thereafter automatically renewed for successive one-year periods—under which Mr. Fink was to receive $150,000 per year base salary plus a bonus of 5% of pre-tax profits of Meyers Parking above $2,400,000. Mr. Fink was 75 years old at the time. The contract contained provisions allowing Mr. Fink or Meyers Parking to terminate the agreement upon Mr. Fink being retained as a consultant at a reduced level of compensation. The agreement contained provisions for death benefit payments in the event of Mr. Fink's death and also provided that if Meyers Parking or Mr. Fink chose to terminate Mr. Fink's employment—thus causing Mr. Fink to be retained at reduced compensation as a consultant— Mr. Fink's compensation as consultant was to remain unaffected by an inability to perform any services. At or about the same time, Meyers Parking made non-interest bearing loans to Mr. Fink which totalled $225,000 which have not yet been repaid.

Plaintiff in this suit seeks cancellation of the contract between Mr. Fink and Meyers Parking and an accounting to Meyers Parking from Mr. Fink for all damages it sustained and for all profits made by any of the defendants as a result of the transactions.. Plaintiff alleges that the transactions were a waste of corporate assets and had no valid business purpose and that the amounts of compensation were excessive compared to the few services rendered by Mr. Fink due to his advanced age—particularly since Mr. Fink remains a Prudential Building consultant and therefore cannot provide his best efforts and devote substantially all of his business time to Meyers Parking. Plaintiff charges the transactions—including the loans—were made solely for the purpose of personally benefitting Mr. Fink. Mr. Fink, it is also alleged, dominated and controlled Meyers Parking by virtue of his 47% stock ownership of the company and Mr. Fink is charged with having selected each of the directors of Meyers Parking although the complaint does not set forth any specific facts demonstrating how this was accomplished.

The entire Board of Directors of Meyers Parking was named in the complaint as defendants because, it is alleged, they approved, participated in, or acquiesced in these purportedly wasteful transactions. Plaintiff further alleged that no demand was made upon the Board of Meyers Parking prior to the filing of suit because the participation by the members of the Board in the transactions and the domination of the Board by Mr. Fink meant that a demand would have been asking the directors to sue themselves. Moreover, plaintiff urges that the fact that the defendants have now moved to dismiss this suit demonstrates that a demand before suit would have been futile due to the Board's obvious hostility to these claims.

The defendants moved to dismiss this action because plaintiff did not make a demand for redress of the alleged wrongs on the directors of Meyers Parking before filing this suit and because plaintiff, in the view of defendants, did not allege with particularity facts which, if true, are sufficient to excuse the failure to make the demand.

## II

■ In considering a motion to dismiss, only those matters referred to in the pleadings are to be considered by the Court. All well plead facts will be assumed to be true and all inferences will be viewed in a light most favorable to the plaintiff. *Del. State Troopers Lodge, etc. v. O'Rourke*, Del.Ch., 403 A.2d 1109 (1979). Conclusions of law or fact, however, will not be assumed to be true without specific allegations of fact which support the conclusion. *Bergstein v. Texas Intern. Co.*, Del.Ch., 453 A.2d 467 (1982), and cases cited therein.

Chancery Court Rule 23.1, which is virtually identical to Fed.R.Civ.P. 23.1, provides in relevant part:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ... [t]he complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort."

■ This rule is one of substantive right—not simply a technical rule of pleading. It is designed to give a corporation, on whose behalf a derivative suit is brought, the opportunity to rectify the alleged wrong without suit or to control any litigation brought for its benefit. A plaintiff, therefore, who chooses not to make a demand prior to suit is faced with the responsibility of demonstrating with particularity why his demand on the Board of Directors would have been futile and if he fails in meeting this burden he will find that his suit will be dismissed, in response to a motion to dismiss, even if he has an otherwise meritorious claim. *Bergstein v. Texas Intern. Co.*, supra; *Mayer v. Adams*, Del. Supr., 174 A.2d 313 (1961). The test for

determining whether a demand for redress before suit would have been futile is whether the Board, at the time of the filing of the suit, could have impartially considered and acted upon the demand. Interestedness affects impartiality and may arise in many ways. For example, it may arise from the personal financial interest of the director in the transaction or because he faces the possibility of personal liability due to his having improperly approved the transaction. *Bergstein v. Texas Intern. Co.,* supra.

■ The business judgment rule, which is a presumption that a rational business decision of an officer or director is proper unless facts exist which remove the decision from the protection of the rule, is a potential defense to allegations of Board interestedness and demand futility. *Bergstein v. Texas Intern. Co.,* supra; *Lewis v. Curtis,* 3d Cir., 671 F.2d 779 (1982). A plaintiff, however, is not required to allege, in order to excuse a demand before suit, that a challenged transaction could not, under any circumstances, be considered the product of business judgment. He must only allege facts which, if true, show that there is a reasonable inference that the business judgment rule is not applicable for purposes of considering a pre-suit demand pursuant to Rule 23.1. In certain circumstances, the challenged transaction, itself, may permit such an inference. However, in order for a plaintiff to overcome the presumption of the business judgment rule, and permit a Court to, at least, draw an inference that the rule is not applicable, there must be allegations of particular facts—and not conclusions—from which such an inference can be drawn. *Bergstein v. Texas Intern. Co.,* supra.

If the demand before suit requirement seems to pose a difficult burden for a plaintiff, it is well to note that any difficulty can be avoided by the making of a demand for redress before suit, thus giving the directors an opportunity to correct the alleged wrongs and to avoid unnecessary litigation.

### III

■ The plaintiff contends that the fact that the defendants moved to dismiss the complaint demonstrates that the directors are obviously hostile to the claims for redress and have, therefore, always been biased. It is clear that the futility of a demand before suit, however, is to be gauged at the time the derivative action is commenced and not afterwards, with the benefit of hindsight. *Cramer v. Gen. Tel. & Elec. Corp.,* 3d Cir., 582 F.2d 259, 276 (1978); *Lewis v. Graves,* 3d Cir., 701 F.2d 245 (1983); *Stepak v. Dean,* Del.Ch., 434 A.2d 388 (1981). At the time the making of a demand before suit was being considered by the plaintiff, there was no evidence that the Board was opposed to pursuing plaintiff's claims. The fact that the Board moved to dismiss this lawsuit after it was filed cannot be considered as evidence that a demand prior to suit would have been no more than a futile gesture.

### IV

The plaintiff here has also not alleged that any director, besides Mr. Fink, was financially interested in the challenged agreement. The Board is not, therefore, disqualified from entertaining a demand for this reason. The plaintiff has alleged, however, that the entire ten-member Board of Meyers Parking—including five outside directors who have never been employees of Meyers Parking—would not have been able to entertain a demand due to Mr. Fink's domination and control of each Board member. Control is evidenced, he insists, by Mr. Fink's ownership of 47% of the outstanding shares of Meyers Parking which he urges, standing alone, demonstrates working control of the corporation. Moreover, it is alleged, Mr. Fink's interest, combined with that of four other defendant-directors, constitutes a clear majority interest of 57.5% of the stock of Meyers Parking—making control even more evident. The plaintiff also charges that the Board could not have been unbiased in approving the transactions, and thus cannot have the protection of the busi-

ness judgment rule, because Mr. Fink has personally selected each director of the Board of Meyers Parking.

Courts which have addressed the question of whether allegations of control based merely on the amount of stock ownership is sufficient to excuse a demand before suit have held such allegations to be insufficient. In *Vernars v. Young,* 3d Cir., 539 F.2d 966, 968 (1976), Chief Judge Seitz examined an allegation that demand was futile because one member of a three-member Board, by virtue of his 50% ownership of the outstanding stock, controlled a third member. He found that such a claim was not plead with sufficient particularity since "[t]here is no presumption that a director is controlled [and] . . . no reason why a plaintiff cannot assert facts from which it is believed an inference of control could be drawn." *Id.,* at 968.

The Ninth Circuit Court of Appeals in *Greenspun v. Del E. Webb Corp.,* 9th Cir., 634 F.2d 1204 (1980), found an allegation of control based on mere ownership of a large block of stock to be insufficient to excuse demand even though the allegedly controlling director was board chairman, president, and chief executive officer and executor of an estate owning a controlling block of shares. The Court held that none of the plaintiff's allegations of misconduct—even though combined with an alleged control by the controlling director—provided "prima facie evidence of control". The mere allegation of control was held to lack factual support and was thereby deemed insufficient to excuse a pre-suit demand.

■■■■ This Court, in another context, has held, after trial, that stock ownership alone is not necessarily proof of control. *Kaplan v. Centex,* Del.Ch., 284 A.2d 119, 122–23 (1971). In that opinion the Court made it clear that no presumption of control arises merely because of the ownership of less than a majority of outstanding shares. There is a presumption, however, that a board's actions are in good faith and for the best interest of the corporation. *Warshaw v. Calhoun,* Del.Supr., 221 A.2d

487, 492–93 (1966); *Prince v. Bensinger,* Del.Ch., 244 A.2d 89, 94 (1968). The presumption of propriety afforded by the business judgment rule is, therefore, not overcome just because a board, otherwise not disqualified, approves a transaction benefitting a stockholder who holds a substantial—but less than a majority—interest in the corporation. To automatically excuse a demand before suit in cases where the beneficiary of an allegedly illegal transaction is a substantial stockholder would deprive a board of its right to exercise its judgment or control over claims brought on the company's behalf.

■■■■ A plaintiff, to properly allege domination of the Board, particularly domination based on ownership of less than a majority of the corporation's stock, in order to excuse a presuit demand, must allege ownership plus other facts evidencing control to demonstrate that the Board could not have exercised its independent business judgment. Mr. Fink's ownership of less than a majority of Meyer's stock stands alone as evidence of his control because plaintiff has not alleged other cogent facts which, combined with Mr. Fink's substantial ownership of stock, would be sufficient to bring into question the impartiality of the Board. The fact that Mr. Fink controls a percentage of stock close to a majority is a fact to be considered and, if coupled with other facts indicating actual control, might lead to a conclusion that Mr. Fink dominated the Board. However, plaintiff's mere allegation, without pleading any other cogent facts, that Mr. Fink has personally chosen each director of Meyers is merely conclusory and does not allege control with particularity.

The arithmatical combination of Mr. Fink's stock interest with those of four other directors to support an allegation of a control group holding 57.5% of the stock of Meyers Parking is similarly only a conclusory allegation. There are no allegations of fact in the complaint which show that these four directors are aligned with Mr. Fink. Although they are co-directors, they are not

beneficiaries of the agreement with Mr. Fink. Plaintiff's claim that two of these four directors have separate compensation agreements with Meyers Parking is not a fact set forth in the complaint and therefore cannot be considered as evidence of an alignment with Mr. Fink—particularly since the circumstances and timing of these other agreements are also not mentioned. A careful reading of the complaint fails to show, by allegations of fact, that there is a nexus between the four directors and Mr. Fink.

It, therefore, cannot be shown, without additional factual support, that the Board of Meyers Parking, if a demand before suit had been made, would have refused to take action antagonistic to Mr. Fink just because he was a substantial—though not a majority—stockholder of the corporation. *Cf., Elfenbein v. Gulf & Western Indus., Inc.,* S.D. N.Y., 454 F.Supp. 6, *aff'd.,* 2d Cir., 590 F.2d 445 (1978). The plaintiff's allegations of domination and control are not substantiated by allegations of fact from which an inference of interestedness or bias may be drawn and they are, therefore, conclusory and insufficient to excuse a demand before suit. *Stepak v. Dean,* supra; *Vernars v. Young,* supra; *Greenspun v. Del E. Webb Corp.,* supra.

## V

The plaintiff also alleged that a demand before suit would have been futile because all the directors of Meyers Parking approved, participated in, or acquiesced in the complained wrongs. He insists that the law of Delaware, as embodied in *Dann v. Chrysler,* Del.Ch., 174 A.2d 696 (1961), demonstrates that an allegation of acquiescence or passive participation in an allegedly tainted transaction is sufficient to show board interestedness and thereby excuse demand. The holding in *Dann* is not that broad, however. A close reading of that decision shows that the Court's ruling was predicated on its finding that the complaint contained the "requisite particulars" to permit an inference that board approval was more

than mere acquiescence or passive approval. Its' approval was possibly fraudulent or grossly negligent. This is quite different than a finding that the board acquiesced or passively approved the transaction.

In ascertaining whether a board's approval of a challenged transaction is protected by the business judgment rule, however, a Court often must look at the underlying transaction for evidence of why approval would have been wrongful. This is what this Court did in *Dann v. Chrysler,* supra, and in *Kaufman v. Beal,* Del.Ch., C.A. No. 6485–N.C., Hartnett, V.C. (Feb. 25, 1983).

In *Kaufman v. Beal,* I determined, after a review of the complaint and the description of the allegedly wasteful transactions, that the demand with respect to one of the challenged transactions was excused, because the challenged payments appeared to be totally undirected to a corporate purpose. I held that the consideration received by the corporation for the payments to various directors and officers appeared to be "so inadequate that no person of ordinary sound judgment would deem it worth what the corporation paid." *Saxe v. Brady,* Del. Ch., 184 A.2d 602 (1962). Approval by the Board, therefore, may have been a breach of fiduciary duty unprotected by the business judgment rule. Because the plaintiff in *Kaufman* was found to have plead facts from which a reasonable inference could be drawn that the business judgment rule did not apply, demand was excused because the directors were potentially liable for having approved the challenged transaction and therefore could not have impartially considered a demand for redress.

An examination of the complaint in the present case also shows that Board approval of the agreement with Mr. Fink may have constituted the approval of a transaction wasteful on its face because there is a provision in the agreement which allows Mr. Fink's compensation as a consultant to remain unaffected by his ability to perform any services. This Court previously reviewed the validity of a similar provision in *Fidanque v. American Maracaibo Co.,* Del.

Ch., 92 A.2d 311 (1952), where a corporation entered into a consultant's contract with its 70-year-old former president. The Court found, after trial, that the contract was basically compensation for past, not present or future, services and was, therefore, wasteful. The opinion was based on various findings, including the recipient's age, health, the fact that the agreement did not spell out what work was expected of him and the fact that "although the contract is for life, it fails to provide as to what would be [his] position in relation to this employment should he again become incapacitated and unable to perform his duties." 92 A.2d at 321.

At this preliminary stage it is impossible to ascertain if the contract between Mr. Fink and Meyers Parking is supported by a valid consideration. All that can be considered, for the purpose of considering a Rule 23.1 motion, is whether the plaintiff has alleged sufficient facts from which a reasonable inference may be drawn that the business judgment rule is not applicable and that the Board's approval of the agreement is unprotected by the business judgment rule. The complaint's description of the contract provision under which Mr. Fink will continue to be paid as a consultant even if unable to perform any services at all describes a transaction that can be reasonably inferred to be wasteful; that is, one which no reasonable man could have approved in the belief that the corporation was getting a *quid pro quo. Fidanque v. American Maracaibo Co.,* supra.

The failure of the plaintiff to have made a demand before suit on the Board, therefore, must be excused because the transaction which was approved by the Board calls the business judgment of the directors into question and mandates further judicial scrutiny.

## VI

In conclusion, the plaintiff's allegations that the failure to make a pre-suit demand must be excused because of domination and control or because of the Board's hostility as demonstrated by the filing of a motion to dismiss are insufficient to excuse a demand. The complaint, however, does allege, with sufficient particularity, facts involving one provision of the compensation agreement from which a reasonable inference may be drawn that the directors could not impartially consider a demand for redress because of their potential liability arising out of their approval of a possibly wasteful transaction. The motion to dismiss is therefore denied.

## ON MOTION FOR REARGUMENT

Defendants moved for reargument of my decision dated March 31, 1983 in which I denied defendants' motion to dismiss based on the failure of the plaintiff to make a demand for redress on the directors of Meyers Parking System, Inc. before suit was filed as is required by Chancery Rule 23.1.

Although defendants' motion for reargument calls attention to a portion of my March 31, 1983 Opinion which requires some revision for purposes of clarification, defendants have not asserted any grounds which could change the result and therefore their motion for reargument must be denied.

## I

Defendants, in their motion for reargument, reassert their contention that the business judgment rule protects the challenged transaction from judicial scrutiny. They correctly point out that the rule is a presumption that a rational business decision of the officers or directors of a corporation is proper unless there exists facts which remove the decision from the protection of the rule—such as self-dealing, conflict of interest, fraudulent, illegal or reckless decisions, waste of corporate assets, etc. *Schreiber v. Pennzoil Co.,* Del.Ch., 419 A.2d 952 (1980); *Prince v. Bensinger,* Del. Ch., 244 A.2d 89 (1968); *Guth v. Loft,* Del. Supr., 5 A.2d 503 (1939). The presumption, however, is rebuttable. *Maldonado v. Flynn,* Del.Ch., 413 A.2d 1251 (1980); *rev'd*

*on other grounds, Zapata v. Maldonado,* Del.Supr., 430 A.2d 779 (1981). In the context of a motion to dismiss brought because of the lack of a pre-suit demand, the protection of the business judgment rule is relevant to the issue of whether the directors could have impartially considered a demand.

■ A difficult burden is therefore placed on a Court when it must decide a motion to dismiss for failure to make a demand pursuant to Rules 12(b) and 23.1— at a preliminary stage of the proceedings— often before an answer has been filed or any discovery taken. See *Penn Mart Realty Co. v. Becker,* Del.Ch., 298 A.2d 349, 352 (1972). As stated in *Bergstein v. Texas Intern. Co.,* Del.Ch., 453 A.2d 467 (1982):

> "Thus, when considering a motion to dismiss where there has been no demand before suit ... a Court is confronted with the necessity of balancing the conflicting interests. 'It thus appears desirable to us to find a balancing point where bona fide stockholder power to bring corporate causes of action cannot be unfairly trampled on by the board of directors, but the corporation can rid itself of detrimental litigation.' *Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 779, 787 (1981).
>
> Each case in which there has been no demand must, therefore, by its very nature, be carefully scrutinized and analyzed according to its own unique set of facts, taking into account the totality of the circumstances and the competing interests."

■ A Court must be particularly careful not to dismiss a case in response to a motion to dismiss for failure to make a pre-suit demand where the plaintiff has alleged sufficient facts from which an inference may be reasonably drawn that the directors could not have impartially considered the demand because of their action in approving the transaction which is challenged in the suit. In such a case the directors may face potential liability for their acts in approving the challenged

transaction and therefore could not have considered a pre-suit demand impartially.

■ In order, however, for a plaintiff to plead facts which permit a court to draw a reasonable inference that the impartiality of the directors is in doubt, a plaintiff must do more than merely make conclusory allegations. If the transaction is one which appears to be protected by the presumption of propriety of the business judgment rule, he must, with particularity, allege facts which, if true, show that the business judgment rule would not protect the challenged transaction from judicial scrutiny—at least for the purpose of considering the demand requirement of Rule 23.1. See *Penn Mart Realty Co. v. Becker,* supra; *Bergstein v. Texas Intern. Co.,* supra. Needless to say, at the motion to dismiss stage, it is usually not possible for a court to determine with certainty whether the presumption of propriety afforded by the business judgment rule will protect the directors. The most that a court can do is to draw a reasonable inference that the presumption of the business judgment rule does not afford sufficient protection to the directors to cause them to be disinterested when considering a demand for redress. Although I have held that such an inference should be drawn here for the purpose of considering the motion to dismiss for failure to comply with Rule 23.1, this does not preclude the business judgment rule from being applied to other aspects of the case. See *Penn Mart Realty Co. v. Becker,* supra.

The facts alleged in the complaint before the Court are similar to the facts set forth in *Fidanque v. American Maracaibo Co.,* Del.Ch., 92 A.2d 311 (1952), where the result, after trial, was a holding that the presumption of the business judgment rule did not preclude judicial scrutiny but the challenged transaction was still found not to be wasteful. The plaintiff here has, therefore, alleged facts, with particularity, which, if true, would permit the Court to disregard the presumption of propriety afforded by the business judgment rule. If the allegations are true, the directors of

Meyers Parking System, Inc. face potential liability for their acts in approving the disputed transaction and could not have considered a demand with impartiality. Plaintiff has therefore shown that a demand before suit would have been futile.

## II

Defendants, in their motion for reargument, also criticize the plaintiff for not specifically alleging that the "reason for failure to make a demand was because the consulting contract with Mr. Fink was so grossly unfair that the directors could not possibly exercise their business judgment to fairly consider demand by a shareholder for reconsideration of the contract by the Board of Directors." Although a plaintiff must allege facts with particularity to meet the mandate of Rule 23.1, it is not necessary that any particular language be used. The complaint must be read in its entirety and should not be construed in a piecemeal manner. The complaint in this case does allege that demand was futile because the entire Board "expressly approved ... and are personally liable for" the wrongs complained of. One wrong set forth in the complaint is a claim of the wasting of corporate assets which allegedly occurred when a contract was entered into which provided for payment to Mr. Fink regardless of his ability to perform any services. When viewed as a whole, therefore, the complaint does set forth with particularity a sufficient excuse for not making a pre-suit demand because of the allegation that the directors approved a transaction undirected to a proper corporate purpose and because of their resulting bias towards any demand due to their potential liability for this approval.

While Rule 23.1 imposes a high standard of pleading for shareholder derivative suits, it does not negate Rule 1 nor return pleadings to the strictures of common law. Hypertechnicalities, fortunately, still have no place in our modern rules of pleading.

The motion for reargument and the motion to dismiss are denied. IT IS SO ORDERED.