Samuel KAUFMAN, Plaintiff,

v.

Charles F. BELMONT, John R. Bonni-
well, Jerome S. Coles, Alvin H. Schul-
man and Philip A. Hunt Chemical Cor-
poration, Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted: Jan. 25, 1984.

Decided: May 8, 1984.

Joseph A. Rosenthal, and Kevin Gross, Morris & Rosenthal, P.A., Wilmington, and Bertram Bronzaft, Garwin, Bronzaft & Gerstein, New York City, for plaintiff.

Jack B. Jacobs, and Bruce M. Stargatt, Young, Conaway, Stargatt & Taylor, Wilmington, and William C. Lucas, and Philip L. Graham, Jr., Sullivan & Cromwell, New York City, for individual defendants.

David A. Jenkins, William T. Allen, and Lewis S. Black, Morris, Nichols, Arsht & Tunnell, Wilmington, and M. Warren Browne, Philip A. Hunt Chemical Corp.,

Palisades Park, N.J., for corporate defendant.

HARTNETT, Vice Chancellor.

Defendants moved to dismiss this action or in the alternative for a summary judgment of dismissal because of the plaintiff's failure to make a demand on the Board of Directors of the corporation prior to instituting suit, as is required by Chancery Court Rule 23.1. The motion must be granted.

## I

This stockholder's derivative action, brought in 1978 on behalf of the stockholders of Philip A. Hunt Chemical Corporation ("Hunt"), alleges that certain directors acted unlawfully by allowing certain of Hunt's officers, who held outstanding stock options, to gain substantial profits to the detriment of the corporation. More specifically, in connection with a tender offer by Turner & Newell Industries ("Turner") for 51% of Hunt's common stock, the directors of Hunt cancelled outstanding stock options which certain officers held and thereby enabled the officers to receive the difference between the tender price and the option price. Such a transaction, plaintiff alleges, amounts to a gift of corporate assets and a breach of fiduciary duty to Hunt and its stockholders.

Nearly three years after the complaint was filed, the defendants filed their first motion to dismiss. I granted that motion in part and dismissed the suit as to certain directors and officers of Hunt but denied the motion as to the directors serving at the time suit was filed who had also been named as defendants. I also permitted the plaintiff to amend the complaint in order to plead with specificity the reasons for the plaintiff's failure to have made a pre-suit demand for redress on Hunt's Board of Directors. *Kaufman v. Albin*, Del.Ch., 447 A.2d 761 (1982). The plaintiff then filed an amended complaint and, unsatisfied, the defendants renewed their motion to dismiss.

## II

In response to the motion to dismiss for failure to make a pre-suit demand, it is necessary to review the complaint in detail to ascertain if the plaintiff has alleged with particularity facts which show that a pre-suit demand for redress of the alleged wrongs would have been futile. *Bergstein v. Texas Intern. Co.*, Del.Ch., 453 A.2d 467 (1982). In the amended complaint it is alleged that a tender offer was made by Turner for at least 51% of the common stock of Hunt on September 12, 1977. Thereafter, the Board of Directors of Hunt determined that the price was fair and unanimously recommended that the stockholders should accept the tender offer. The Board further considered the effect of the proposed tender offer on Hunt's officers and employees who held unexercised common stock options. The directors were advised that Turner intended to purchase stock *pro rata* from all tendering stockholders, including any officer or employee of Hunt who tendered stock. In order to permit Hunt's employees who held options to benefit from the tender offer, the Board unanimously agreed to accelerate the exercise date of all options held by employees, other than officers. Apparently, that decision is not challenged by the plaintiff. The Board also approved a resolution by which Hunt would cancel the stock options held by the officers and pay to those officers the difference between the exercise price and the tender offer price. It is this resolution which plaintiff attacks. The alleged reason for the separate handling of the officers' options was that, under federal securities law, an actual exercise by the officers of their options and a subsequent sale of the stock to Turner might have resulted in a "short-swing profit" that could not be retained by the officers under the rules of Section 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(b).

The Board of Directors at the time these resolutions were approved consisted of sev-

en members. Of the seven, only Charles Belmont and John Bonniwell held outstanding stock options. By the time this derivative suit was filed on July 14, 1978, resignations and elections had substantially changed the Board. At that time the Board consisted of nine members, four of whom were members at the time the challenged resolution was approved. Those four members are Charles Belmont, John Bonniwell, Jerome Coles and Alvin Schulman. Thus, only four of the nine persons who were directors when suit was filed had been directors at the time of the approval of the challenged resolution and only two of them benefitted directly from the transaction.

### III

The amended complaint alleges that demand on the Hunt Board would have been futile because:

"(a) Defendant-directors Bonniwell, Belmont, Coles and Schulman all actively participated in and voted in favor of the resolution to accept the cancellation of the options of officer-optionees and make a corresponding cash payment to them despite the fact that Hunt's stock option plans did not make provision for such stock option cancellation and payments.

(b) Director-defendants Bonniwell and Belmont were substantial beneficiaries of the option cancellations and corresponding payments.

(c) T & N [Turner], in obtaining the approval of Hunt's Board of Directors for its offer, made a number of commitments prior to and during the pendency of the offer, to Hunt's directors, among them the tacit approval of the cancellation of officer-optionees' options and the corresponding payments. T & N's designees on the Board of Directors, Charles Wilfred Nelson, Nigel Anthony Cutler, George J. Haufler and Stephen R. Petschek, would therefore not institute suit on the transaction, improper on its face, which T & N permitted in order to obtain

Board of Director approval of its tender offer.

(d) Director Lause was the hand picked candidate to the Board of Directors of the above eight members of the Board.

(e) The Directors by reason of their hostile interest cannot be expected to initiate a corporate suit to correct the wrongs alleged herein."

The defendants respond that these allegations do not show that a demand on the Hunt Board of Directors immediately before filing suit would have been futile and therefore excused. They point out that five of the nine directors serving when suit was filed were not directors of Hunt when the option cancellation resolution was approved. Thus, defendants argue, a majority of the Board was clearly capable of impartially considering a demand to redress the alleged wrongs and of exercising their business judgment in reviewing the allegations. Furthermore, they say, the plaintiff's attempt to disqualify directors Coles and Schulman from considering the demand due to a "hostile interest" is not factually supported. The defendants do concede, however, that directors Bonniwell and Belmont were disqualified from considering a demand to rectify the alleged wrongs because they were interested as direct beneficiaries of the option cancellation resolution.

### IV

In considering a motion to dismiss for failure to make a pre-suit demand pursuant to Rule 23.1, this Court will only look to the pleadings. *Bergstein v. Texas Intern. Co.*, Del.Ch., 453 A.2d 467 (1982). All well-plead facts must be assumed to be true. *Roland Intern. Corp. v. Najjar*, Del.Supr., 407 A.2d 1032 (1979). Allegations, however, will not be assumed to be true unless there exists specific facts which are sufficient to support the conclusions. *Weinberger v. UOP, Inc.*, Del.Ch., 409 A.2d 1262 (1979); *Cohen v. Mayor and Council*

*of Wilmington,* Del.Ch., 99 A.2d 393 (1953).

Chancery Court Rule 23.1, which is virtually identical to Fed.R.Civ.P. 23.1, provides in relevant part:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ... [t]he complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort."

It is a rule of substantive right—not simply a rule of technical pleading. *Haber v. Bell,* Del.Ch., 465 A.2d 353 (1983); *Aronson v. Lewis,* Del.Supr., 473 A.2d 805 (1984). A plaintiff, therefore, who brings a derivative suit and chooses not to make a demand prior to the filing of suit is faced with the responsibility of demonstrating with particularity why his demand on the board of directors would have been futile. If a plaintiff fails to meet the burden imposed by Rule 23.1, his suit will be dismissed upon a motion to dismiss even if he has an otherwise meritorious claim. *Haber v. Bell,* supra.

As the Delaware Supreme Court has recently stated: "... [t]he entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability. The business judgment rule is an acknowledgment of the managerial prerogatives of Delaware directors under [8 *Del.C.*] Section 141(a).... It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.... Absent an abuse of discretion, that judgment will be respected by the courts. The burden is on the party challenging the decision to establish facts rebutting the presumption...." *Aronson v. Lewis,* Del.Supr., 473 A.2d at p. 812.

Accordingly, in reviewing a motion to dismiss for failure to make a pre-suit demand, the court must carefully scrutinize the complaint in order to determine if the plaintiff has alleged facts with particularity which will excise his failure to have made a demand.

V

Recently the Delaware Supreme Court in *Aronson v. Lewis,* Del.Supr., 473 A.2d 805 (1984), *rev'g. Lewis v. Aronson,* Del.Ch., 466 A.2d 375 (1983), rejected the reasonable inference test used by this Court in considering whether the failure to make a pre-suit demand should be excused and substituted a reasonable doubt test. The high Court took note of the fact that this Court, in reviewing the failure to make a pre-suit demand, determined from a review of the facts alleged in the complaint that there was a *reasonable inference* that the business judgment rule was not applicable as to at least part of the claim. Reasoning that "demand futility becomes virtually automatic under such a review," the Supreme Court rejected that test and found that "the matter must be approached in a more balanced way." The Supreme Court stated:

"... in determining demand futility the Court of Chancery in the proper exercise of its discretion must decide whether, under the particularized facts alleged, *a reasonable doubt* is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." (emphasis added) *Aronson v. Lewis,* Del.Supr., 473 A.2d at p. 814.

Obviously, this new inquiry standard imposes a higher burden on a plaintiff who seeks to be excused from making a demand by showing its futility. A plaintiff, therefore, in order to show the futility of a pre-suit demand must allege facts with particularity that show that a reasonable doubt exists that the directors were not sufficiently disinterested or independent to

have entertained a pre-suit demand or that the transaction, for other reasons, can not be the product of business judgment. Cf. *Haber v. Bell,* supra.

## VI

First to be addressed, therefore, is whether the directors selected by Turner were so tainted by self-interest or lack of independence as to be precluded from exercising their business judgment in reviewing a pre-suit demand for redress—if a demand had been made.

The plaintiff claims that the directors who were designees of Turner (Nelson, Cutler, Haufler and Petschek) could not have disinterestedly considered a demand to institute this action for two reasons. The first is that after their election they tacitly acquiesced in the resolution cancelling the options, which was adopted before they took office, because they did not raise an objection as to the propriety of the earlier transaction. The second reason advanced by plaintiff that the directors could not have impartially entertained a pre-suit demand is that those directors were Turner's nominees and as such, they could not disinterestedly consider a demand request as to a transaction which Turner had previously agreed to in order to obtain support for its tender offer.

■ The first allegation, that the directors acquiesced in the prior transaction, does not raise a reasonable doubt as to the independence or disinterestedness of the directors. A mere allegation of acquiescence without more is insufficient to show breach of fiduciary duty or lack of independence or disinterestedness. *Aronson v. Lewis,* supra; *Haber v. Bell,* Del.Ch., 465 A.2d 353 (1983) (mere allegation that Board "approved or acquiesced in" a transaction which plaintiffs attacked as a waste of corporate assets is insufficient to excuse demand). Clearly, the corollary of this principle is that a bare allegation that directors failed to subsequently disapprove or attack a transaction which occurred before they became directors, without even any factual allegation that they knew of the transaction, is also not sufficient to show any basis for disqualification to consider a pre-suit demand. There are no facts plead in the complaint which even indicate a breach of fiduciary duty or otherwise show a lack of independence or disinterestedness as to the directors who were elected after the challenged transaction had been approved.

■ Plaintiff's second attack on the ability of the four Turner designees to properly consider a pre-suit demand is also without merit. There are simply no factual allegations that Turner instructed its nominees not to overturn the prior transaction or agreed with Hunt's previous Board that its nominees would not overturn the transaction after they were elected. There has, therefore, been no allegation of facts which, if true, would show that the Turner nominees could not have impartially considered a pre-suit demand to reconsider the challenged transaction cancelling the options. It is not sufficient to simply charge that a director was nominated by those who stood on the other side. Cf. *Aronson v. Lewis,* supra. "It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election that generally touches on independence." *Id.*

■ Director Lause is also attacked as being an interested director. It is claimed that he was self-interested because he was chosen by the other eight directors who were allegedly disabled from considering the pre-suit demand. Essentially, this argument is akin to an allegation of domination and control. Such an allegation, however, does not support a claim that Lause lacked independence. The complaint does not allege facts to show that he was dominated and controlled by others in his decision making. In order to create a reasonable doubt that Lause was independent, the plaintiff would have to allege facts which would demonstrate that through personal or other relationships, Lause was beholden to the controlling persons. See *Aronson v.*

*Lewis, supra; Mayer v. Adams*, Del.Ch., 167 A.2d 729, 732, *aff'd.*, Del.Supr., 174 A.2d 313 (1961). No facts have been alleged, however, that show that he could not have used his independent judgment in considering a pre-suit demand concerning a transaction which took place before he became a director.

The plaintiff next argues that directors Coles and Schulman are not independent and disinterested because they actively participated in and voted in favor of the challenged transaction. Furthermore, the plaintiff argues in his brief that there was some sort of conspiracy between Coles and Schulman on one side and Belmont and Bonniwell on the other. The plaintiff further claims that Coles and Schulman saw an opportunity to realize substantial gains from the tender offer and to insure passage they agreed to vote in favor of the resolution to help out Bonniwell and Belmont who had agreed to vote favorably for the tender offer.

 The plaintiff has created a reasonable doubt, as defendants concede, as to whether directors Bonniwell and Belmont could have disinterestedly considered a pre-suit demand. They were major beneficiaries of the challenged resolution—each received $123,017 in connection with the cancellation of the option. In such a situation, they were obviously self-interested. See *Bergstein v. Texas Intern. Co., supra* at 471; *Sinclair Oil Corp. v. Levien*, Del. Supr., 280 A.2d 717 (1971); *David J. Greene & Co. v. Dunhill International, Inc.*, Del.Ch., 249 A.2d 427 (1968).

 The complaint's factual allegations as to the relationship between Coles and Schulman and Belmont and Bonniwell, however, do not create a reasonable doubt as to the existence of any conspiracy or as to the independence or disinterestedness of Coles and Schulman. As mentioned, the mere approval of a corporate action, absent any allegation of particularized facts supporting a breach of fiduciary duty or other indications of bias, will not disqualify the director from subsequently considering a pre-suit demand to rectify the challenged transaction. *Aronson v. Lewis, supra; In Re Kauffman Mutual Fund Actions*, 1st Cir., 479 F.2d 257, 265, *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973); *Weiss v. Temporary Investment Fund*, D.Del., 516 F.Supp. 665, 672 (1981), *aff'd.*, 3d Cir., 692 F.2d 928, 943 (1982). The plaintiff attempts to show that directors Coles and Schulman were self-interested by their mere act of voting in favor of the resolution. This argument is without merit. There are no facts alleged that show that any voting agreement between any of the parties ever existed. Furthermore, there are no facts alleged that indicate that Coles and Schulman would not have received their substantial gains had they not voted in favor of the challenged resolution. And the allegation that there were commitments running from Hunt to certain directors is merely conclusionary. The plaintiff's reference in his brief to a conspiracy is pure hyperbole and is not based on any allegations of fact in the complaint.

It must also be noted that Bonniwell and Belmont were only two members of a nine-member board. There has been no allegation of any facts which would enable me to conclude that a reasonable doubt exists that the other seven members were disqualified to consider a pre-suit demand, if one had been made.

## VII

Next to be considered is whether I can find, from the allegations of fact in the amended complaint, that a reasonable doubt exists that the challenged transaction was the product of a valid exercise of business judgment. As *Aronson* states: "... [i]n rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists." *Aronson, supra; Haber v. Bell, supra.*

 After reviewing the factual allegations, I cannot find that the complaint alleges that the challenged transaction is so egregious that it would fail to be protected by the business judgment rule. The challenged resolution was passed to cancel the outstanding stock options of Hunt held by the officers so as to allow them to also benefit from the premium to be paid for the stock of Hunt as a result of a tender offer which is not challenged as being unfair to the stockholders of Hunt. The announced purpose of this resolution was to provide the same benefit to the officers as the other employees received through the only method allowed by the securities laws. There are no facts alleged which dispute this purpose. The purpose is obviously a valid business purpose and the decision by the directors to treat the officers equally with the other employees of Hunt is the type of decision which is protected by the presumption of propriety afforded by the business judgment rule in the absence of any facts which would prevent its applicability.

While the complaint may make allegations which might state a claim for relief in some other context, the complaint does not meet the Rule 23.1 mandate that it allege with particularity facts which could cause the court to conclude that a reasonable doubt exists that the transaction is protected from further judicial scrutiny by the business judgment rule. Cf., *Michelson v. Duncan*, Del.Supr., 407 A.2d 211 (1979).

### VIII

 Finally, the plaintiff seeks permission to now take discovery to bolster his opposition to the motion to dismiss. None of the cases cited by plaintiff in support of his position, however, involved a motion to dismiss for failure to make a pre-suit demand. In the Rule 23.1 context only the pleadings are considered and the plaintiff is not entitled to take discovery to supplement his allegations of demand futility. *Lewis v. Curtis*, 3rd Cir., 671 F.2d 779 (1982); *Greenspun v. Del E. Webb Corp.*, 9th Cir., 634 F.2d 1204 (1980).

The plaintiff has again failed to allege facts which would raise a reasonable doubt that a majority of the directors were disqualified from impartially considering a pre-suit demand or that the challenged transaction was so egregious that the business judgment rule does not protect it. The motion to dismiss, therefore, must be granted.

IT IS SO ORDERED.