Smith v. Raymond, 2010 NCBC 18.

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF MECKLENBURG | 10 CVS 5321 |

PATRICK SMITH, Derivatively on
Behalf of Nominal Defendant Horizon
Lines, Inc.,

        Plaintiff,

    v.

CHARLES G. RAYMOND, M. MARK
URBANIA, GABRIEL SERRA, R.
KEVIN GILL, GREGORY GLOVA,
NORMAN Y. MINETA, DAN A.
COLUSSY, JAMES G. CAMERON,
WILLIAM J. FLYNN, VERN CLARK,
ALEX J. MANDL, THOMAS P.
STORRS, JOHN V. KEENAN, ROBERT
ZUCKERMAN, BRIAN W. TAYLOR,
and JOHN HANDY,

        Defendants,

and

HORIZON LINES, INC.,

        Nominal
        Defendant.

**ORDER & OPINION**

*Jackson & McGee, LLP by Gary W. Jackson and Sam McGee and Barroway Topaz Kessler Meltzer & Check, LLP by Eric L. Zagar and Ligaya T. Hernandez for Plaintiff.*

*McGuireWoods, LLP by A. Jordan Sykes and John H. Cobb and Skadden, Arps, Meagher & Flom, LLP by Anthony W. Clark, Paul J. Lockwood and Nicole A. DiSalvo for Defendants Charles G. Raymond, M. Mark Urbania, John V. Keenan, Robert Zuckerman, Brian W. Taylor, and John Handy and Nominal Defendant Horizon Lines, Inc.*

*Wyatt & Blake, LLP by James F. Wyatt, III and Robert A. Blake, Jr. and Baker Botts, LLP by James R. Doty, J. Bradley Bennett, Jennifer Owens and Nicholas Margida for Defendants Norman Y. Mineta, Dan A. Colussy, James*

*G. Cameron, William J. Flynn, Vern Clark, Alex J. Mandl, and Thomas P. Storrs.*

Diaz, Judge.

{1}    The Court heard this matter on 24 September 2010 on the Motion of Nominal Defendant Horizon Lines, Inc. ("Horizon" or the "Company") and Defendants Charles G. Raymond, M. Mark Urbania, John V. Keenan, Robert Zuckerman, Brian W. Taylor and John Handy (collectively, the "Officer Defendants"), to dismiss Plaintiff's Verified Shareholder Derivative Complaint for failure to make pre-suit demand as required by Delaware law[1] and, in the case of the Officer Defendants, to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state claims against them.

{2}    Defendants James G. Cameron, Vern Clark, Dan A. Colussy, William J. Flynn, Alex J. Mandl, Norman Y. Mineta, and Thomas P. Storrs (collectively, the "Outside Directors") have also moved to dismiss the Complaint on these same grounds.[2]

{3}    After considering the Complaint, the briefs and submissions of the parties, and the arguments of counsel, the Court agrees with Defendants that Plaintiff has failed to (1) make demand on Horizon before filing suit or (2) adequately plead demand futility as required under Delaware law.

{4}    Accordingly, because the Complaint must be dismissed on this ground, the Court does not reach Defendants' alternative arguments for dismissal.

## I.
## FACTS

---

[1] Delaware law applies to this issue because Horizon is a Delaware corporation. (Compl. ¶ 5.) *See* N.C. Gen. Stat. § 55–7–47 (2009) ("In any derivative proceeding in the right of a foreign corporation, the matters . . . shall be governed by the laws of the jurisdiction of incorporation of the foreign corporation.").

[2] The Complaint names three additional defendants (Gabriel Serra, R. Kevin Gill, and Gregory Glova) who have not appeared and do not join the motions before the Court. (Compl. ¶¶ 8–10.)

{5}    Horizon operates a container shipping business that transports cargo between the United States and (1) Alaska, (2) Hawaii and Guam, and (3) Puerto Rico. (Compl. ¶ 2.)

{6}    Plaintiff Patrick Smith ("Smith") is a Horizon shareholder and was so at the time of the facts alleged in the Complaint. (Compl. ¶ 4.)

{7}    Defendants include present or former officers of Horizon and Horizon's eight-member board of directors (the "Board"), seven of whom are outside directors (collectively, the "Individual Defendants"). (Compl. ¶¶ 6–21.)

{8}    Smith brought this suit on behalf of Horizon seeking damages from the Individual Defendants resulting from what Smith characterizes as their "illegal and improper business practices." (Pl.'s Br. Opp'n Mot. Dismiss 1.)

{9}    Smith contends that the Individual Defendants breached their fiduciary duties of loyalty and good faith by "knowingly permitting Horizon to engage in a wide-spread, multi-year antitrust price-fixing conspiracy that pervaded all three of [Horizon's] principal trade routes." (Pl.'s Br. Opp'n Mot. Dismiss 1; Compl. ¶¶ 126–29.)

{10}    According to Plaintiff, the following particularized allegations in his Complaint support this contention:

- The Individual Defendants closely monitored Horizon's trade route markets because its revenues were material to the Company. (Compl. ¶ 100.)

- As early as October 2005, the Individual Defendants received numerous minutes, presentations, and other correspondence from the Company's CEO regularly informing them of the status of Horizon's trading routes. (Compl. ¶¶ 100–18.)

- These materials showed that the Company continued to increase its shipping rates and surcharges (often in lock-step with its competitors) despite significant and steady decreases in shipping volume. (Compl. ¶¶ 100–18.)

- The Individual Defendants often discussed the continued "softness" of the Company's markets. (Pl.'s Br. Opp'n Mot. Dismiss 12, citing Compl. ¶¶ 100–18.)

- The anomaly of the Company's continued rising shipping rates in the face of a "soft" volume market can "only be explained by an antitrust conspiracy." (Pl.'s Br. Opp'n Mot. Dismiss 12, citing Compl. ¶¶ 100–18.)
- Defendants Gabriel Serra, R. Kevin Gill, and Gregory Glova, all of whom worked as executives in the Company's Puerto Rico division, plead guilty on or around 20 October 2008 to federal charges alleging that they conspired with one or more of Horizon's competitors to suppress and eliminate competition along Horizon's Puerto Rico trade route. (Compl. ¶ 49.)

- Serra, Gill and Glova have told prosecutors that certain senior [but as of yet unidentified] Horizon executives knew of and were involved in the conspiracy. (Compl. ¶¶ 54–58.)

(Pl.'s Br. Opp'n Mot. Dismiss 11–13.)


## II.

## ANALYSIS

{11} Plaintiff concedes that he did not make demand on the Board prior to bringing this derivative action. (Compl. ¶¶ 123–25.)

{12} The issue before the Court is whether demand should be excused under the facts alleged in the Complaint.

{13} The Court holds that demand is not excused and therefore **DISMISSES** the Complaint **with prejudice**.

{14} A Delaware corporate shareholder may not bring a derivative action until (1) he has made a demand on the corporation to institute the action itself, and such demand has been refused, or (2) he demonstrates that demand on the corporation would have been futile. *Stepak v. Dean*, 434 A.2d 388, 390 (Del. Ch. 1981).

{15} To survive a motion to dismiss in a case where demand is not first made on the corporation, Plaintiff must plead facts *with particularity* that demonstrate the reasons why demand would have been futile. *Aronson v. Lewis*, 473 A.2d 805, 808 n.1 (Del. 1984) (citing Delaware Court of Chancery Rule 23.1), *overruled in part by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

{16}     Where the complaint challenges a specific action of the board of directors, Delaware courts apply the two-step *Aronson* test, requiring Plaintiff to plead particularized facts that raise a reasonable doubt as to (i) director disinterest or independence or (ii) whether the directors exercised proper business judgment in approving the challenged transaction. *Id.* at 814.

{17}     Alternatively, "where the subject of a derivative suit is not a business decision of the board" but rather a violation of the board's oversight duties, the Court examines "whether or not the particularized factual allegations of a . . . complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

{18}     Regardless of the test applied, however, the disqualifying interest or lack of independence must afflict a majority of the corporation's directors. *Grimes v. Donald*, 673 A.2d 1207, 1216 (Del. 1996).

{19}     In this case, the parties dispute whether *Aronson* or *Rales* informs the Court's analysis of the pending motions.

{20}     After considering the issue, the Court is hard-pressed to understand how (as Plaintiff urges) the two-step *Aronson* analysis applies on the facts presented.

{21}     The reason is because, even accepting Plaintiff's version of the facts as true, the Complaint alleges no "decision" by the Board that implicates the business judgment rule.

{22}     Instead, what Plaintiff alleges is that the Board either overlooked or intentionally ignored ample evidence before it of a price-fixing scheme perpetrated by several of Horizon's executives. (Compl. ¶¶ 100–125.)

{23}     That type of allegation, however, amounts to a claim that the Board failed in its oversight duties, a contention that clearly is governed by *Rales.*

{24}     In any event, the Court concludes that dismissal is appropriate under either standard because of Plaintiff's failure to make demand on the Board.

{25} Plaintiff's theory for excusing demand in this case is that such an effort would be futile where each member of the Board has been sued because they either knew and actively condoned, or should have known and prevented, the illegal price fixing conspiracy purportedly pervading Horizon's three principal trade routes. (Pl.'s Br. Opp'n Mot. Dismiss 18–21.)

{26} Opting for an aggressive tack, Plaintiff's Complaint begins with a broadside allegation that each and every Individual Defendant knowingly conspired to illegally fix prices in Horizon's three principal markets, an allegation that is repeated throughout the pleading. (Compl. ¶¶ 2, 30, 58–59, 70, 80, 85, 88, 92.)[3]

{27} If this serious allegation is Plaintiff's attempt to satisfy the second prong of the *Aronson* test, it goes without saying that a board's decision to approve an illegal price-fixing conspiracy would be—to put it charitably—poor business judgment.

{28} Delaware courts, however, have consistently rejected demand futility arguments based on "blanket allegations that the directors participated in or approved the alleged misconduct." *In re Pozen S'holders Litig.*, 2005 NCBC 7 ¶ 60 (N.C. Super. Ct. Nov. 10, 2005), http://www.ncbusinesscourt.net/opinions/ 2005%20NCBC%207.htm. *See also Aronson*, 473 A.2d at 817 ("[M]ere directorial approval of a transaction, absent particularized facts . . . establishing the lack of independence or disinterestedness of a majority of the directors, is insufficient to excuse demand.").[4]

{29} Perhaps recognizing that more is needed to avoid dismissal, Plaintiff also alleges that because the Board received regular updates from senior management on "soft" market conditions and also knew of Horizon's "illogically high revenues, the [Board] knew that the Company was engaging in antitrust conspiracies, had a

---

[3] Only three of the Individual Defendants (Serra, Gill, and Glova) have actually admitted involvement in the price-fixing conspiracy. (Compl. ¶¶ 48–49.) And although the Complaint alleges that the federal government's investigation is ongoing and may result in broader charges, (Compl. ¶ 53), Defendants Serra, Gill, and Glova pled guilty to antitrust violations limited to Horizon's Puerto Rico trade route (Compl. ¶¶ 48–49).

[4] Similarly, the fact that the directors might be required to sue themselves is, without more, insufficient to excuse demand. *In re Pozen S'holders Litig.*, 2005 NCBC 7 ¶ 63 (citing *Aronson*, 473 A.2d at 818).

duty to stop it, yet failed to do so." (Pl.'s Br. Opp'n Mot. Dismiss 12, citing Compl. ¶ 49.)

{30} Plaintiff seeks to further sow the seeds of reasonable doubt by pointing to statements purportedly made by Defendants Serra, Gill, and Glova to prosecutors that "senior Horizon executives" knew of and were involved in the conspiracy. (Pl.'s Br. Opp'n Mot. Dismiss 12-13, citing Compl. ¶¶ 54–58.)

{31} Plaintiff certainly pulls no punches in accusing the Board of direct knowledge of the price fixing conspiracy described in the Complaint.[5] But the particularized allegations contained in the Complaint to support Plaintiff's contention fall far short of what is required under Delaware law to excuse demand.

{32} Those specific allegations amount to a series of quotes from internal documents regarding the financial performance of the Company from approximately October 2005 to January 2008 that Plaintiff claims the Individual Defendants reviewed in advance of Board meetings. (Compl. ¶¶ 100–18.)

{33} According to Plaintiff, "through these items, the Individual Defendants were regularly informed of the status of the trading routes and Horizon's rising rates and surcharges despite the very obvious fact that market conditions were "soft" with shipping volumes steadily decreasing, which could *only* be explained by an antitrust conspiracy." (Pl.'s Br. Opp'n Mot. Dismiss 12.)

{34} To the contrary, however, the document excerpts quoted by Plaintiff in his Complaint do not state, or even suggest that Horizon's prices and shipping rates had been set by illegal means.

{35} And while the documents do show that the Company's rates continued to increase despite decreasing shipping volumes, the Court agrees with Defendants that mere knowledge on the part of the Board of price increases and soft shipping

---

[5] Plaintiff's no-holds-barred pleading is almost certainly a function of the fact that Horizon's certificate of incorporation exempts the Company's directors from personal liability for claims that merely allege negligence or gross negligence. (Defs.' Br. Supp. Mot. Dismiss Ex. A at 22–23.)

volumes "does not constitute knowledge that those price increases must have resulted from illegal activities." (Defs.' Br. Supp. Mot. Dismiss 11.)[6]

{36} Plaintiff seeks to buttress his conspiracy theory by pointing to statements purportedly made by Defendants Serra, Gill, and Glova to prosecutors suggesting that "other senior Horizon executives" may have been involved in the price fixing scheme. (Pl.'s Br. Opp'n Mot. Dismiss 12–13, citing Compl. ¶¶ 54–58.)

{37} According to Plaintiff, these statements are evidence that the Board is complicit in the conspiracy and therefore cannot impartially consider the litigation. (Compl. ¶¶ 123–25.)

{38} This contention fails for at least two reasons.

{39} First, as one federal court has already noted in a case considering these same statements—albeit in the context of a motion to dismiss a class action alleging violations of federal securities law—the statements are "extraordinarily vague and do not specify who [the] alleged co-conspirators were." *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 423 (D. Del. 2009).

{40} Although the issue in this case is demand futility, the Court finds the alleged statements no more probative than did the federal court, and thus they do not support Plaintiff's contention that demand should be excused.

{41} Second, the Court notes that Horizon's Board consists of eight members, seven of whom are outside directors. (Compl. ¶¶ 11–17.)

{42} Read literally, the claim that senior Horizon "executives" may have been involved in the price fixing scheme does not implicate Horizon's seven outside "directors" because, the former is "'a corporate officer at the upper level of management,'" while the latter is "'appointed or elected to sit on a board that manages the affairs of a corporation or company by electing and exercising control

---

[6] Moreover, Plaintiff's Complaint admits that the Outside Directors joined the Board at various times. (Compl. ¶¶ 11–17.) In fact, only two of the Outside Directors have served on the Board since 2005; two joined the Board in late 2006, and the remaining three directors did not join until June 2007. (Compl. ¶¶ 11–17.) Thus, the Outside Directors rightly take offense at Plaintiff's attempt to impute knowledge of an alleged price-fixing conspiracy to all Outside Directors based on documents that some (if not most) of them likely have never seen. (Outside Director Defs.' Br. Supp. Mot. Dismiss 7.)

over its officers.'" (Outside Director Defs.' Reply Br. 9, quoting Black's Law Dictionary (2d pocket ed. 2001).)

{43} In sum, neither the internal documents reviewed by the Board during the period of the price fixing conspiracy nor the vague statements made by three of the conspirators during their sentencing hearing provide a reasonable ground for concluding that the Board knew of and actively participated in the wrongdoing alleged in Plaintiff's Complaint.

{44} Accordingly, the Court declines to find that a majority of the Board was conflicted, such that demand should be excused.

III.

CONCLUSION

{45} Plaintiff has failed to satisfy his burden to plead particularized facts establishing demand futility.

{46} Thus, the Court **GRANTS** Defendants' Motion to Dismiss the Complaint for Plaintiff's failure to make demand before filing suit.

{47} In light of this decision, the Court does not reach the Defendants' alternative arguments for dismissal.

**SO ORDERED**, this the 21st day of October, 2010.