Krieger v. Johnson, 2014 NCBC 13.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 13727

JOEL KRIEGER, Derivatively on Behalf of
Nominal Defendant DUKE ENERGY
CORPORATION,

     Plaintiff

   v.

WILLIAM JOHNSON, JAMES E. ROGERS,
WILLIAM BARNET, III, G. ALEX
BERNHARDT, SR., MICHAEL G.
BROWNING, DANIEL R. DIMICCO, JOHN
H. FORSGREN, ANN MAYNARD GRAY,
JAMES H. HANCE, JR., E. JAMES
REINSCH, JAMES T. RHODES and PHILIP
R. SHARP,

     Defendants

  and

DUKE ENERGY CORPORATION,

     Nominal
     Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER
ON MOTIONS TO DISMISS**

THIS MATTER comes before the court upon Motion to Dismiss for Failure to State a Claim by Defendant William Johnson ("Johnson Motion") and Motion to Dismiss the Verified Shareholder Amended Complaint by Defendants James E. Rogers; William Barnet, III; G. Alex Bernhardt, Sr.; Michael G. Browning; Daniel R. Dimicco; John H. Forsgren; Ann Maynard Gray; James H. Hance, Jr.; E. James Reinsch; James T. Rhodes; Philip R. Sharp and Nominal Defendant Duke Energy Corporation ("Duke Defendants' Motion") (collectively, "Motions"). The Motions seek dismissal of this civil action pursuant to the provisions of Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, having reviewed the Motions, the briefs in support and opposition thereof, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motions should be GRANTED for the reasons stated herein.

*Ward Black Law by Janet Ward Black, Esq. and Faruqi & Faruqi, LLP by Michael J. Hynes, Esq. and Ligaya T. Hernandez, Esq. for Plaintiff.*

*Tharrington Smith, LLP by Douglas E. Kingsbery, Esq., Randall M. Roden, Esq. and Wade M. Smith, Esq. for Defendant William Johnson.*

*Womble Carlyle Sandridge & Rice, LLP by Debbie W. Harden, Esq. and Sidley Austin LLP by Steven M. Bierman, Esq., Erica S. Malin, Esq. and Jackie A. Lu, Esq. for Defendants James E. Rogers, William Barnet, III, G. Alex Bernhardt, Sr., Michael G. Browning, Daniel R. DiMicco, John H. Forsgren, Ann Maynard Gray, James H. Hance, Jr., E. James Reinsch, James T. Rhodes, Philip R. Sharp and Duke Energy Corporation.*

Jolly, Judge.

## PROCEDURAL BACKGROUND

[1]     Plaintiff's Verified Shareholder Derivative Amended Complaint ("Amended Complaint") was filed on August 1, 2012.

[2]     The Amended Complaint asserts the following derivative claims ("Claim(s)") on behalf of Duke Energy Corporation ("Duke"): (a) Count I – Against Defendants Barnet, Bernhardt, Browning, DiMicco, Forsgren, Gray, Hance, Reinsch, Rhodes and Sharp for Breach of Fiduciary Duties of Loyalty and Good Faith; (b) Count II –  Against Defendants Barnet, Bernhardt, Browning, DiMicco, Forsgren, Gray, Hance, Reinsch, Rhodes and Sharp for Waste of Corporate Assets; (c) Count III – Against Defendant Johnson for Unjust Enrichment; and (d) Count IV – Aiding and Abetting Breach of Fiduciary Duty Against Defendant Rogers.

[3]     The Motions have been briefed and argued, and are ripe for determination.

FACTUAL ALLEGATIONS

Among other things, the Amended Complaint alleges that:

[4]     This action arises out of the merger between Progress Energy, Inc. ("Progress") and Duke that occurred between 2011 and 2012 ("Merger").  Under the terms of the Merger, Progress became a wholly owned subsidiary of Duke, thereby creating one of the country's largest electric utility companies.

[5]     In the period leading up to the finalization of the Merger, it was represented to stakeholders of both companies, among others, that William Johnson ("Johnson"), then CEO of Progress, would serve as CEO of the combined company. James Rogers ("Rogers"), then the CEO of Duke, was to serve as executive chairman of the combined company's board of directors.[1]

[6]      The Merger was approved by a vote of the shareholders of both companies on August 23, 2011.[2]

[7]     On June 27, 2012, Duke entered into a three-year employment agreement with Johnson under which Johnson would serve as President and CEO of the combined company ("Employment Agreement").  Pursuant to the Employment Agreement, Johnson was to receive significant severance payments if Duke terminated his employment without cause, or if Johnson voluntarily resigned for good reason at any time following the close of the merger but prior to the second anniversary of such closing.[3]

---

[1] Am. Compl. ¶ 35.
[2] *Id.* ¶ 37.
[3] *Id.* ¶ 40; Mem. Law Supp. Dir. Defs.' & Duke Energy Corp.'s Mot. Dismiss Verified Shareholder Derivative Am. Compl. 6 ("Duke Brief").

[8]     The terms of the Employment Agreement were consistent with a term sheet that was executed as a part of the January 2011 merger agreement and attached as an exhibit to Duke's Form 8-K, publicly filed with the SEC on July 3, 2012 ("8-K").[4]

[9]     The Merger became final after being approved by North Carolina regulators on July 2, 2012.[5]

[10]    Within hours of the Merger becoming final, Duke announced that Johnson had been removed as CEO of the combined company and that Rogers instead would serve in that role.  The decision to remove Johnson was made by the board of directors of the newly-combined company.  Ten former Duke directors voted in favor of removing Johnson ("Director Defendants").[6]  Five directors, all former directors of Progress, voted against the removal of Johnson as CEO.[7]

[11]    Subsequently, Johnson and Duke entered into the Separation Agreement, which provided, among other things, that Johnson became CEO of Duke effective July 2, 2012, and left that position by resignation at 12:01 a.m. on July 3, 2012.  Johnson's removal as CEO triggered payments to him that could reach as much as $44.4 million.[8]

---

[4] The Employment Agreement and a Separation and Settlement Agreement ("Separation Agreement") are attached to the 8-K as Exhibits 10.1 and 10.2, respectively.  The 8-K, Employment Agreement and Settlement Agreement are specifically referred to in the Amended Complaint, and properly are before the court for consideration in the context of a Rule 12(b)(6) motion.  *See* Coley v. N.C. Nat'l Bank, 41 N.C. App. 121 (1979).

[5] Am. Compl. ¶ 38.

[6] Defendants William Barnet, III; G. Alex Bernhardt, Sr.; Michael G. Browning; Daniel R. Dimicco; John H. Forsgren; Ann Maynard Gray; James H. Hance, Jr.; E. James Reinsch; James T. Rhodes and Philip R. Sharp.  The Duke Brief contends that the Director Defendants were outside directors.  Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss does not contest that contention.

[7] Am. Compl. ¶¶ 40-42.

[8] *Id.* ¶¶ 41-45. The Amended Complaint specifically refers to the 8-K in support of its allegation that Johnson is owed as much as $44.4 million under the Employment Agreement. Both sides appear to acknowledge that the total value of payments due Johnson based upon his termination could be as high as $44.4 million. Notwithstanding the parties' implicit agreement, the payments alleged in the Amended Complaint do not total $44.4 million. Rather, the amounts allegedly due Johnson included, among other things, $7.4 million in severance, a nearly $1.4 million cash bonus, a special lump-sum payment worth up to $1.5 million, accelerated vesting of his stock awards and $30,000 for relocation expenses.  The Amended Complaint provides no detailed explanation of how the total owing to Johnson might otherwise

<u>DISCUSSION</u>

[12]     Both Motions seek dismissal of various Counts in the Amended Complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").[9] Rule 12(b)(6) dismissal is appropriate when the complaint fails to state a claim upon which relief can be granted.  In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but legal conclusions and unwarranted deductions of facts are not deemed admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).  The court notes that in ruling upon such a motion, "the complaint is to be liberally construed, and the trial court should not dismiss the complaint 'unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.'"  *Meyer v. Walls*, 347 N.C. 97, 111-12 (1997) (quoting *Dixon v. Stuart*, 85 N.C. App. 338, 340 (1987)).  In its discretion, the court elects to address Count III before moving on to the less straightforward issues raised by Counts I, II, and IV.

<u>The Johnson Motion</u>

[13]     The Johnson Motion seeks dismissal of Plaintiff's Count III unjust enrichment Claim on the basis that such a claim will not lie where there is a contract between the parties.  The court agrees.  A claim for unjust enrichment is properly dismissed where the complaint reveals the existence of a contract between the parties.

---

reach the $44.4 million figure, and the Separation Agreement provides no greater clarity.  The Separation Agreement specifies the payments alleged by Plaintiff in the Amended Complaint and also lists undisclosed amounts due or paid to Johnson classified as, "[a]ccrued and vested amounts under all non-qualified and incentive plans, including the Progress, Inc. Management Deferred Compensation Plan, the Progress, Inc. Management Incentive Compensation Plan and the Progress, Inc. Deferred Compensation Plan for Key Management Employees."

[9] Although fashioned as a Rule 12(b)(6) motion, the Duke Defendants' Motion argues in favor of dismissal based on both Rules 12(b)(6) and 12(b)(1), the latter upon an argument arising from the failure of Plaintiff to make pre-suit demand as to the derivative Claims.

*Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330-31 (2002) (holding that a claim for unjust enrichment, as a quasi-contractual remedy, cannot be maintained where an explicit contract exists between the parties).

[14]    As the North Carolina Court of Appeals recently noted:

> Unjust enrichment has been defined as "a legal term characterizing the 'result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor.'" "A claim of this type is . . . described as a claim in quasi contract or a contract implied in law. . . . If there is a contract between the parties[,] the contract governs the claim and the law will not imply a contract."

*Rev O, Inc. v. Woo*, ___ N.C. App. ___, 725 S.E.2d 45, 49 (2012) (internal citations omitted).

[15]    Here, Plaintiff alleges that Johnson was "unjustly enriched by his receipt of excessive compensation in the form of a $44 million severance payment."[10]  The Amended Complaint reveals, however, that the severance payments of which Plaintiff complains arose out of Johnson's Employment Agreement with Duke.[11]  Thus, the Amended Complaint discloses the existence of a contract between the parties concerning the subject matter of Plaintiff's unjust enrichment Claim.

[16]    Plaintiff appears to argue that the severance payments owing to Johnson were excessive in light of Johnson's "scant hours of service."[12]  Even assuming the payments to Johnson might be considered excessive as Plaintiff alleges, the existence

---

[10] Am. Compl. ¶ 74.
[11] *Id.* ¶¶ 40-43.
[12] *Id.* ¶ 44.

of a contract between the parties concerning the subject matter of the unjust enrichment Claim is dispositive, as discussed above.[13]

[17]     Accordingly, the Amended Complaint fails to state a Claim for unjust enrichment as to Defendant Johnson, and the Johnson Motion should be GRANTED with regard to Count III.

The Duke Defendants' Motion

[18]     The Duke Defendants' Motion seeks dismissal of Plaintiff's Claims in Counts I and II against the Director Defendants and Duke, arguing that (a) Plaintiff has failed to state any claim against them upon which relief may be granted, and (b) Plaintiff lacks standing to bring any derivative claims because his failure to make pre-suit demand is not excused.  If Plaintiff does not have standing to bring the derivative Claims alleged in this civil action, the action is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction and analysis of Defendants' Rule 12(b)(6) contentions would be unnecessary.  Accordingly, the court will address the standing issue first.

Standing – Failure to Make Pre-suit Demand

[19]     Duke is incorporated in the State of Delaware and has its principal place of business in North Carolina.[14]  Both Delaware[15] and North Carolina[16] require that prior

---

[13] Plaintiff's unjust enrichment Claim is particularly problematic in the context of a derivative action. Because Plaintiff's unjust enrichment Claim is brought by and on behalf of Duke, the Claim amounts to an attempt by Duke to disown the terms of a contract into which it entered on the basis that the express terms of the contract were unfair to Duke.  An assertion that the express terms of a contract were ultimately unfavorable to one of the contracting parties, without more, does not state a claim for unjust enrichment. *See, e.g.,* Embree Constr. Grp., Inc. v. Rafcor, Inc., 330 N.C. 487, 496 (1992) (distinguishing a claim for unjust enrichment based on expected contractual benefits from a claim regarding non-contractual benefits).
[14] Am. Compl. ¶ 10.
[15] Del. Ch. Ct. R. 23.1.
[16] N.C. Gen. Stat. § 55-7-42.

to filing a derivative suit in behalf of a corporation, a plaintiff must make appropriate demand that the board of directors initiate the action in behalf of the corporation. Nothing else appearing, a plaintiff who files a derivative action without meeting this pre-suit burden faces dismissal of the action for lack of standing to prosecute his claim.

[20] Plaintiff concedes that he did not make a pre-suit demand of the Duke Board of Directors with regard to the matters alleged in the Complaint, but argues and alleges that his failure to do so should be excused because such demand would have been "a futile and useless act" since the Board was "incapable of making an independent and disinterested decision to institute and vigorously prosecute this action."[17] Plaintiff's contentions raise issues involving internal corporate governance and affairs.

[21] The laws of Delaware and North Carolina are materially different with regard to whether failure to make a pre-suit demand can be excused by a showing that the demand would have been futile. North Carolina no longer recognizes the futility exception to the demand requirement.[18] Accordingly, the first determination to be made is which state's law should govern here. Both North Carolina and Delaware recognize the "internal affairs" doctrine, which provides that only the state of incorporation can exercise the authority to regulate "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *See, e.g., Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 616 (Del. 2013), *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680 (2008) (citing *Edgar v. MITE Corp.*, 457 U.S. 624

---

[17] Am. Compl. ¶ 60.
[18] *See* Allen v. Ferrera, 141 N.C. App. 284, 288-289 (2000); N.C. Gen. Stat. § 55-7-42.

(1982)); *see also* N.C. Gen. Stat. § 55-7-47 (providing that the laws of the state of incorporation of a foreign corporation shall govern derivative actions).  Duke is a Delaware corporation, and the failure to make pre-suit demand of a derivative claim concerns Duke's internal affairs.  Consequently, whether Plaintiff's failure to make pre-suit demand is excused is a matter to be settled in accordance with the laws of Delaware. [19] *Id.*

[22]  Delaware Chancery Court Rule 23.1 requires a plaintiff in a derivative suit to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority." A plaintiff who brings a derivative suit without such an allegation must show that a demand on the board of directors would have been futile. A plaintiff that fails to meet this burden faces dismissal upon a motion to dismiss "even if he has an otherwise meritorious claim." *Kaufman v. Belmont*, 479 A.2d 282, 286 (Del. Ch. 1984).

The <em>Aronson</em> Test

[23]  Under Delaware law, whether the pre-suit demand requirement is excused is governed by *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled in part by Brehm v. Eisner*, 746 A.2d 244 (Del. 1998) ("*Aronson* Test").  Pursuant to the *Aronson* Test, pre-suit demand is excused where particular facts are alleged that raise a reasonable doubt as to (a) director disinterest or independence or (b) whether the directors exercised proper business judgment in approving the challenged transactions. *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993), *abrogated by Hamilton Partners,*

---

[19] Defendants concede this point.  S*ee* Duke Brief 11.  Further, in other cases this court has reached the same determination under similar circumstances. *See, e.g.*, Smith v. Raymond, 2010 NCBC 18 ¶ 1 n.1; Egelhof v. Szulik, 2006 NCBC 4 ¶ 41 (reversed in part on other grounds by Egelhof v. Szulik, 193 N.C. App. 612 (2008)).

*L.P. v. Englard*, 11 A.3d 1180 (Del. Ch. 2010). Reasonable doubt in this context is present where facts are alleged that would give a reasonable shareholder reason to doubt the ability of a board of directors to disinterestedly consider a demand. *Rales*, 634 A.2d at 934.

Directors' Disinterest or Independence

[24] Turning first to whether the Amended Complaint raises a reasonable doubt as to director disinterest or independence, the court notes that there is no allegation that any director obtained a personal financial or pecuniary benefit from the decision to terminate Johnson. Instead, the Amended Complaint argues that the Director Defendants face a substantial likelihood of personal liability for "committing waste and violating the Company's compensation mandates by approving Johnson's severance payment."[20] According to Plaintiff, the ability of the Director Defendants to consider any demand for corporate action made by Plaintiff was sufficiently compromised by a substantial likelihood of liability for the Director Defendants so as to make any demand by Plaintiff futile.

[25] Under Delaware law, directors have a "disabling interest when the potential for liability is not a mere threat but instead may rise to a substantial likelihood." *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1269 (Del. Ch. 1995) (internal quotations and citations omitted). Put another way, "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors, although in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business

---

[20] Pl. Resp. Br. 9 (citing Am. Compl.).

judgment, and a substantial likelihood of director liability therefore exists." *Aronson*, 473 A.2d at 815.

[26]    The Amended Complaint alleges that the Duke Board is incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action because the "[Director Defendants] are substantially likely to be held liable for breaching their fiduciary duties and wasting corporate assets by terminating Johnson and paying him a $44 million severance package."[21]

[27]    Mere allegations that directors participated in or approved of the alleged wrongs as a showing of directorial interest have been consistently rejected by Delaware courts. *Decker v. Clausen*, 1989 Del. Ch. LEXIS 143, at *7-8 (Del. Ch. Sept. 8, 1989). *See also Rales*, 634 A.2d 927 (holding that blanket allegations that the director participated in or approved the alleged misconduct are insufficient to establish interest); *Kaufman v. Belmont*, 479 A.2d 282, 288 (Del. Ch. 1984) ("[M]ere approval of a corporate action . . . will not disqualify the director from subsequently considering a pre-suit demand to rectify the challenged transaction." (internal citations omitted)); *Haber v. Bell*, 465 A.2d 353, 359 (Del. Ch. 1983) ("[A]llegations that the members of the Board of Directors 'approved or acquiesced in' the actions which plaintiffs attack are . . . not sufficient to excuse demand for redress before suit." (internal citations omitted)) Instead, plaintiff must plead with particularity facts that demonstrate that the potential for director liability rises to the level of a "substantial likelihood." *Wood v. Baum*, 953 A.2d 136, 141, 141 n.11 (Del. 2008) (internal citations omitted).

---

[21] Am. Compl. ¶ 62(a).

[28]     In substance, the Amended Complaint relies upon the sort of conclusory allegations that are inadequate to demonstrate a substantial likelihood of liability on the part of the Director Defendants.  By way of example, the Amended Complaint alleges that "Johnson's severance payment is excessive, unreasonable and serves no legitimate purpose,"[22] that "[t]here was not, and could not possibly have been, a good faith business reason to approve a $44 million severance payment to Johnson in connection with his dismissal,"[23] and that "the Company has received nothing of real value from Johnson in exchange for awarding him $44 million."[24]

[29]     The court notes that the relative timing of Johnson's formal Employment Agreement and his departure presents some troublesome details.  However, after consideration of the Amended Complaint and materials appropriately of record, viewed in the light most favorable to Plaintiff, as well as the broad discretion afforded directors as to compensation and severance matters, the court cannot conclude that the amount of Johnson's severance and its timing give rise to a substantial likelihood of director liability.  *See, e.g., Brehm v. Eisner*, 746 A.2d 244, 262 n.56 (Del. 2000) ("To be sure, directors have the power, authority and wide discretion to make decisions on executive compensation.").

[30]     Plaintiff argues that, in approving the termination of Johnson and the severance payments to him, the Director Defendants knowingly violated the Company's publicly-disclosed compensation mandates.  According to Plaintiff, "Duke has pledged to its stockholders in the Company's annual proxy materials that compensation of Duke

---

[22] *Id.* ¶ 43.
[23] *Id.* ¶ 44.
[24] *Id.* ¶ 46.

executives will serve the goals of (1) 'attract[ing] and retain[ing] talented executive officer' [*sic*]; (2) 'emphasiz[ing] performance-based compensation'; and (3) 'reward[ing] individual performance.'"[25]  Plaintiff contends that, "[b]y granting Johnson's excessive payout at a time when he was leaving the Company after having only performed a few hours of work, the Director Defendants clearly knew that his severance award fulfilled none of the Company's compensation mandates."[26]

[31]    Plaintiff attempts to transform the executive compensation goals stated in Duke's proxy materials into affirmative mandates that were breached by Director Defendants based on their dealings with Johnson.  This attempt by Plaintiff also fails to demonstrate a substantial likelihood of director liability.  While Plaintiff is correct that shareholders may generally rely upon information distributed by directors, *Malone v. Brincat*, 722 A.2d 5 (Del. 1998), the statements by Duke related to executive compensation are plainly aspirational on their face and should not be contorted into affirmative mandates or representations that could give rise to a substantial likelihood of liability under the circumstances of this matter.

[32]    Accordingly, the court CONCLUDES that Plaintiff's failure to make pre-suit demand is not excused based on the failure of the Director Defendants to be disinterested and independent.

Directors' Business Judgment

[33]    In order for pre-suit demand to be excused in the context of directors' business judgment, a complaint must meet the burden of raising a reasonable doubt as to whether "the challenged transaction was the product of a valid exercise of business

---

[25] Pl. Resp. Br. 17.
[26] *Id.*

judgment." *Aronson*, 473 A.2d at 814. There exists a presumption that the directors acted on an informed basis, and with a good faith honest belief that the action taken was in the company's best interest. *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1373 (Del. 1995) (*quoting Aronson,* 473 A.2d at 812). The burden is on the challenging party to plead facts rebutting this presumption. *Id.* A plaintiff must plead particularized facts sufficient to raise a reason to doubt that (a) "the action was taken honestly and in good faith" or (b) "the board was adequately informed in making the decision." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824-25 (Del. Ch. 2005) ("Due to the absence of particularized factual allegations calling into question the directors' good faith, honesty, or lack of adequate information, the court finds that the complaint does not give rise to a reason to doubt whether the decision of the board of directors of JPMC to approve the Merger Agreement is entitled to the protection of the business judgment rule.").

[34]   The Amended Complaint here contains no particularized allegations that the Director Defendants were not adequately informed in making the decision to terminate Johnson's employment agreement and approve the severance payments to him. The only allegation that speaks to whether the Director Defendants were adequately informed is Plaintiff's conclusory allegation that, "[f]or certain, in its hurry to pay Johnson off, the Board failed to deliberate or inform itself of the foregoing transaction."[27]

[35]   Plaintiff contends that the decision by the Director Defendants to approve the severance payments to Johnson could not have been the product of a valid exercise

---

[27] Am. Compl. ¶ 49.

of business judgment because those payments amount to corporate waste.[28]  Thus, according to Plaintiff, reasonable doubt as to whether the severance payments to Johnson were the product of a valid exercise of business judgment may be raised by its allegations that those payments amounted to waste.  Specifically, Plaintiff contends that reasonable doubt can be raised through allegations of waste by pleading that, "what the corporation has received is so inadequate that no person of ordinary, sound business judgment would deem it worth that which the corporation has paid."[29]

[36]    Delaware courts have developed an exacting standard by which to evaluate claims of corporate waste.

> The judicial standard for determination of corporate waste is well developed.  Roughly, a waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.  *See Saxe v. Brady,* 40 Del. Ch. 474, 184 A.2d 602, 610; *Grobow v. Perot,* Del. Supr., 539 A.2d 180, 189 (1988).  Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received. Such a transfer is in effect a gift. If, however, there is *any substantial* consideration received by the corporation, and if there is a *good faith judgment* that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude a post that the transaction was unreasonably risky. Any other rule would deter corporate boards from the optimal rational acceptance of risk, for reasons explained elsewhere. *See Gagliardi v. TriFoods Intern., Inc.,* Del. Ch., 683 A.2d 1049 (1996). Courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard or, *ex post,* to judge appropriate degrees of business risk.

*Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997).

---

[28] Pl. Resp. Br. 10.
[29] *Id.* at 9 (citation omitted).

[37]     The crux of Plaintiff's argument related to waste is that, "[t]he Director Defendants' unanimous decision to pay Johnson $44 million for only a few hours of work is a clear waste of Company assets under Delaware law."[30]  To this end, Plaintiff attempts to parse the total severance payments made to Johnson in terms of the few hours he actually served as CEO of the combined company.  However, the Amended Complaint fails to account for the fact[31] that in the event of merger, Johnson was entitled to receive substantial severance benefits under the Progress Management Change-In-Control Plan even if his subsequent Employment Agreement with Duke had never been formalized.  The Amended Complaint only fleetingly acknowledges that, in further consideration of his severance payments, Johnson provided (a) a release of claims against Duke; (b) an agreement to cooperate with Duke in respect to transition matters and (c) non-competition, non-solicitation, non-disparagement and confidentiality covenants.

[38]     The business judgment rule entitles the Director Defendants to the presumption that they acted in good faith in making the decision to terminate Johnson and approve the severance payments to him.  That presumption is heightened in cases where the majority of directors are outside or independent.  *Leung v. Schuler*, 2000 Del. Ch. LEXIS 41 at \*39 (Del. Ch. Feb. 29, 2000) (internal citations omitted).  "To overcome that presumption and to survive a motion to dismiss . . . the complaint must plead specific facts from which it can be inferred that 'the decision [by the board] is so beyond

---

[30] *Id.* at 11.
[31] Clearly established in the Employment Agreement, 8-K and attached exhibits.  This is conceded by Plaintiff in his response brief.  *Id.* at 11 n.4.

the bounds of reasonable judgment that it seems essentially inexplicable on any other grounds.'" *Id.*

[39]   The court cannot conclude that the allegations of the Amended Complaint support a finding or conclusion that what Duke received in consideration for the severance payments to Johnson was so inadequate that no person of ordinary, sound business judgment would deem it worth the amount paid.

[40]   The Amended Complaint asserts that Johnson received "exit payments worth as much as $44.4 million for his day's work,"[32] and that, "the Company . . . received nothing of real value from Johnson in exchange for awarding him $44 million."[33]  These conclusory assertions are insufficient to overcome the presumption that the Director Defendants acted in good faith in terminating Johnson and approving his severance payments.  Thus, in the context of the present action, Plaintiff's allegations of waste do not provide sufficient basis to doubt that the action was taken honestly and in good faith.

[41]   Accordingly, the court CONCLUDES that Plaintiff's failure to make a pre-suit demand relative to any derivative Claims in this civil action was not excused. Plaintiff therefore does not have standing to bring the derivative Claims alleged in Counts I and II of this civil action.  As to Counts I and II, the action is subject to dismissal under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and further analysis of Defendants' Rule 12(b)(6) contentions is unnecessary.  As to Counts I and II the Duke Defendants' Motion therefore should be GRANTED.

---

[32] Am. Compl. ¶ 41.
[33] *Id.* ¶ 46.

Claim IV Against Defendant Rogers

[42]    In view of the above rulings, there remain no substantive Claims against the Director Defendants.  Consequently, there are no Claims to support the aiding and abetting Count IV allegations against Rogers.  Accordingly, as to Count IV the Duke Defendants' Motion should be GRANTED.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

[43]    The Motion to Dismiss for Failure to State a Claim by Defendant William Johnson is GRANTED.  Count III of the Amended Complaint therefore is DISMISSED.

[44]    The Motion to Dismiss the Verified Shareholder Derivative Amended Complaint by Defendants James E. Rogers; William Barnet, III; G. Alex Bernhardt, Sr.; Michael G. Browning; Daniel R. Dimicco; John H. Forsgren; Ann Maynard Gray; James H. Hance, Jr.; E. James Reinsch; James T. Rhodes; Philip R. Sharp and Nominal Defendant Duke Energy Corporation is GRANTED as to Counts I, II and IV of the Amended Complaint. Counts I, II and IV of the Amended Complaint therefore are DISMISSED.

[45]    There remain no further Claims in this civil action, and this matter hereby is DISMISSED in its entirety.

[46]    Taxable costs in this civil action are charged to Plaintiff.

This the 30th day of April, 2014.